19 F.3d 19
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David JOHNSON, Petitioner-Appellant,
v.
Michael O'DEA, Warden, Respondent-Appellee.
 No. 92-6063.
 United States Court of Appeals, Sixth Circuit.
 Feb. 18, 1994.
 
 Before: KEITH, GUY, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner-Appellant, David Johnson seeks habeas corpus relief pursuant to a 1980 guilty plea for theft by unlawful taking. The district court dismissed the petition finding that Johnson was no longer "in custody". For the reasons set forth herein, we affirm.
 
 
 2
 * On August 18, 1980, David Johnson pleaded guilty to a charge of theft by unlawful taking and was sentenced to two years imprisonment. Johnson was paroled on March 4, 1981. While on parole, Johnson committed another offense which resulted in a ten-year consecutive sentence. In 1989, an escape by Johnson added a five-year consecutive sentence. On January 16, 1990, Johnson received a seven-year sentence for second degree burglary and three years for theft by unlawful taking. Both of these additional sentences were to be served consecutively.
 
 
 3
 The substance of this habeas petition involves Johnson's claim that he received ineffective assistance of counsel in the 1980 proceedings on the charge of theft by unlawful taking, and that his guilty plea to that charge was not knowingly, intelligently or voluntarily entered. Johnson claims that before he pleaded guilty, he had a private meeting with his attorney and the judge at which time both threatened him and told him that he "had better" take the plea bargain offered by the state.
 
 
 4
 By May 1990, when Johnson launched his post-conviction attack on his 1980 sentence by filing a motion to vacate under Kentucky Rule of Criminal Procedure 11.42, both the trial judge and Johnson's attorney in the original action had died. On July 16, 1990, the Lawrence Circuit Court overruled Johnson's motion to set aside or vacate the judgment and denied a motion for an evidentiary hearing, finding that the original plea agreement had been entered into "knowingly and intelligently." The Commonwealth of Kentucky Court of Appeals dismissed Johnson's appeal, finding that he could not collaterally attack the sentence under Kentucky Rule of Criminal Procedure 11.42 because he was no longer "in custody" pursuant to his 1980 conviction. Johnson then sought collateral review through federal habeas corpus proceedings, and on June 11, 1992, the magistrate recommended that his habeas petition be dismissed since Johnson was no longer "in custody" for his 1980 conviction. On July 16, 1992, the district court adopted the magistrate's recommendation and the petition was dismissed. This appeal followed.
 
 II
 
 5
 The sole issue before this court is whether Johnson was "in custody" for his 1980 conviction when he filed his 1990 petition for habeas corpus relief. Johnson contends that Kentucky Revised Statute Sec. 532.10 "merges" his convictions and thus confers jurisdiction for his habeas corpus petition.
 
 
 6
 In Peyton v. Rowe, 391 U.S. 54 (1968), the Supreme Court addressed the issue of what constitutes being "in custody" for purposes of filing a petition for habeas corpus. That case revisited the issue, earlier decided in McNally v. Hill, 293 U.S. 131 (1934), of whether a district court may entertain a petition for a writ of habeas corpus from a prisoner incarcerated under consecutive sentences who claims that a sentence he is scheduled to serve in the future is constitutionally invalid. McNally had held that in light of the federal habeas corpus statute's silence as to the meaning of "in custody," and the decisions of the Supreme Court interpreting and applying the common law principles governing habeas corpus, a petition for relief from a sentence which the petitioner had not yet begun to serve was premature. McNally, 293 U.S. at 138.
 
 
 7
 The Peyton Court first examined the purposes of the writ, noting that its history establishes that, even by the time McNally was decided, the federal writ of habeas corpus was "substantially a post-conviction device which could afford prompt adjudication of factual as well as legal issues." Peyton, 391 U.S. at 60. The Court stressed the need for prompt adjudication of habeas corpus claims and emphasized the necessity of permitting collateral attacks on future sentences because "dimmed memories or the death of witnesses is bound to render it difficult or impossible to secure crucial testimony on disputed issues of fact." Id. at 62. Addressing solely the issue of habeas attack on future sentences, the Court went on to say,
 
 
 8
 Of course prejudice to meritorious claims resulting from the kind of delay which McNally imposes is not limited to situations involving ineffective assistance of counsel. To name but a few examples, factual determinations are often dispositive of claims of coerced confession; lack of competency to stand trial; and denial of a fair trial. Postponement of the adjudication of such issues for years can harm both the prisoner and the State and lessens the probability that final disposition of the case will do substantial justice. As the Court of Appeals observed:
 
 
 9
 "Years hence, the prisoner, at least, may be expected to give testimonial support to the allegations of his petition, but if they are false in fact, the Commonwealth of Virginia may be unable to refute them because of the unavailability of records and of the testimony of responsible officials and participants in the trial. The greater lapse of time, the more unlikely it becomes that the state could reprosecute if retrials are held to be necessary. It is to the great interest of the Commonwealth and to the prisoner to have these matters determined as soon as possible when there is the greatest likelihood the truth of the matter may be established. 383 F.2d, at 715."
 
 
 10
 Peyton, 391 U.S. at 62-63 [citations and footnotes omitted].
 
 
 11
 Because it found that McNally's rule was inconsistent with the purposes underlying the writ, the Court stated "[w]e overrule McNally and hold that a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of Sec. 2241(c)(3)" Id. at 67.
 
 
 12
 Clearly, Peyton was specifically designed to overrule McNally's holding that a prisoner "in custody" under one sentence may not attack a sentence which he has not yet begun to serve. The primary rationale for overruling McNally was that "postpon[ing] of plenary consideration of issues by the district courts [ ] [ ] undermines the character of the writ of habeas corpus as the instrument for resolving fact issues not adequately developed in the original proceedings." Id. at 63. For this reason, the Peyton Court determined that interpreting 28 U.S.C. Sec. 2241's "in custody" language to encompass consecutive sentences imposed but not yet served would eliminate the "inconsistencies between purpose and practice which flow from the McNally holding." Id. at 65.
 
 
 13
 We think that the rationale of Peyton and the harm which it sought to alleviate apply with equal force to the situation in which a prisoner waits to bring his petition until the sentence which he seeks to attack has expired. Indeed, one of the situations of prejudice enumerated in Peyton is the very claim being pursued by the petitioner in this case--that he was coerced into entering a guilty plea. And as the Supreme Court quoted with approval from the appellate court opinion in Peyton, "if the allegations of his petition are false in fact, the [state] may be unable to refute them because of the unavailability of records and of the testimony of responsible officials and participants in the trial." Id. at 62. That prejudice is no less inconsistent with the purposes of the writ merely because it results from time which has already passed before the petition is filed, rather than from time which will pass before the petition may be filed.
 
 
 14
 In dealing with the application of Peyton to past confinements, this Court has stated:
 
 
 15
 Apparently, petitioner's reasoning is that if under Peyton the "in custody" requirement must be read to allow prisoners to use habeas corpus petitions to challenge future confinement, the same analysis should logically work in reverse to compel the conclusion that the "in custody" language permits prisoners to challenge past confinement.
 
 
 16
 This syllogism fails. Neither the language of the statute nor the manifest purpose of the writ goes that far.
 
 
 17
 Ward v. Knoblock, 738 F.2d 134, 138 (6th Cir.1984). This Court has clearly indicated an intention not to "open the door" to the creation of jurisdiction for sentences which have been fully served. Id.[1]
 
 
 18
 The Supreme Court's ruling in Maleng v. Cook, 490 U.S. 488 (1989), has limited any argument that Peyton can be read beyond overruling McNally and its rule on prematurity. In Maleng, the Supreme Court held that a habeas petitioner does not remain "in custody" after a sentence has fully expired merely because the prior conviction will be used to enhance a sentence imposed for subsequent crimes for which petitioner may be convicted. Id. at 492. Johnson's two year sentence, along with the time spent on parole for his 1980 conviction, clearly expired before 1990. The record does not indicate that any of Johnson's subsequent sentences were exacerbated by his 1980 conviction. Thus, even a narrow application of Maleng results in a finding that Johnson is not suffering any collateral consequences for his 1980 conviction and is thus, not "in custody."[2]
 
 
 19
 Our conclusion with regard to Peyton necessitates careful consideration of Johnson's argument that the Kentucky statute for calculation of terms of imprisonment, Sec. 532.120,[3] "merges" his convictions and thus confers jurisdiction for habeas review of any of his sentences until the ultimate conclusion of his imprisonment.
 
 
 20
 Johnson's argument is not persuasive. First, Johnson's various sentences are to indeterminate terms of imprisonment and are thus covered by the language of KRS Sec. 532.120(1)(b). Second, the courts of Kentucky have definitively ruled that Johnson was no longer in custody on the sentence which he sought to attack when he filed his 1990 motion to vacate that sentence under Kentucky RCr 11.42. Johnson's claim of standing to bring this habeas petition is premised on his claim that, as a matter of Kentucky law as set out in KRS Sec. 532.120, his initial sentence continues in effect until his entire series of consecutive sentences has been served. The Kentucky Court of Appeals did not specifically address Sec. 532.120 in ruling that Johnson was not in custody, but we think it is apparent that Sec. 532.120 was not material to its ruling because it does not have any effect on the separate and distinct character of consecutive sentences, but was enacted to provide statutory guidance for the administrative task of calculating the maximum total time for which individuals may be incarcerated when serving multiple sentences. See 1974 Commentary, Kentucky Revised Statutes. And third, even if it were the province of this court to give a different interpretation to Kentucky law from that pronounced by the Kentucky courts, we are persuaded that the Kentucky courts' interpretation is correct. As the State of Kentucky points out, the purpose of Sec. 532.120 is not to merge consecutive sentences for purposes of collaterally attacking them. Further, even if that statute had some applicability here, there is a distinction between the language of "merger" found in subsection (1)(a) (calculating concurrent indeterminate sentences) and the language of "aggregate" found in subsection (1)(b) (calculating consecutive indeterminate sentences); and there is a conspicuous absence in subsection (1)(b) of the language of satisfaction of sentence found in subsection (1)(a) and subsection (2) (dealing with determinate sentences). The aggregation of consecutive indeterminate sentences for administrative purposes does not accomplish a merger which keeps the first sentence "in play" until the last of the consecutive sentences is over.
 
 
 21
 To rule as petitioner suggests is to adopt the "dog, dog, bite pig"[4] approach to calculating "in custody" for purposes of habeas proceedings. We reject this attenuated mode of analysis and conclude that at the time he filed his habeas petition, Johnson was not "in custody" on the two-year sentence imposed in 1980 since he had fully served that sentence. The district court properly dismissed Johnson's petition.
 
 III.
 
 22
 For the foregoing reasons, the order dismissing petitioner's habeas corpus petition is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 This Court declined to follow the reasoning set forth by the Seventh Circuit in Harrison v. Indiana, 597 F.2d 115 (7th Cir.1979). In Harrison the court held that since the first sentence delayed the commencement of the second sentence and thus delayed the petitioner's release date, the petitioner was in custody for the first sentence so long as he remained imprisoned
 
 
 [2]
 We recognize that two other circuits have taken a contrary position, holding that Maleng v. Cook, supra, is inapposite and that the "in custody" issue in the context of expired sentences is governed by Peyton. We find these cases unpersuasive. Fawcett v. Bablitch, 962 F.2d 617 (7th Cir.1992) simply cited Peyton v. Rowe, supra, for the proposition that a prisoner in custody on any of consecutive sentences is in custody on all of them, but did not mention or discuss the actual facts, rationale and entire holding of Peyton. Bernard v. Garraghty, 934 F.2d 52 (4th Cir.1991) contains some discussion, but concludes that the difference between Rowe's attempt to challenge a sentence which he had not yet begun to serve and Bernard's attempt to challenge a consecutive sentence he had already served was "irrelevant," id. at 55, and that Peyton had held "dispositive the fact that the Virginia parole statute provided that Rowe's parole eligibility was to be determined on the basis of an aggregate sentence of fifty years, the total of his thirty-year and twenty-year sentences." Id. at 55. Without commenting on whether the Virginia parole statute was "dispositive," we note that the Peyton Court discussed that statute solely in terms of the need for habeas petitioners to be able to attack sentences not yet being served because of the damage to their claims which the passage of time might do
 
 
 [3]
 The statute reads in part:
 (1) An indeterminate sentence of imprisonment commences when the prisoner is received in an institution under the jurisdiction of the corrections cabinet. When a person is under more than one (1) indeterminate sentence, the sentences shall be calculated as follows:
 (a) If the sentences run concurrently, the maximum terms merge in and are satisfied by discharge of the term which has the longest unexpired time to run; or
 (b) If the sentences run consecutively, the maximum terms are added to arrive at an aggregate maximum term equal to the sum of all the maximum terms.
 (2) A definite sentence of imprisonment commences when the prisoner is received in the institution named in the commitment. When a person is under more than one ((1) definite sentence, the sentences shall be calculated as follows:
 (a) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest unexpired time to run; or
 (b) If the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term.
 KRS Sec. 532.120.
 
 
 [4]
 See, "The Little Old Woman and Her Pig" in The Tall Book of Nursery Tales, (Western Publishing Co. 1944) ("stick, stick, beat dog; dog won't bite pig, pig won't go over the stile, and we shan't get home tonight")