Richard **WINSTEAD**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2009–SC–000019–DG.

Supreme Court of Kentucky.

Dec. 16, 2010.

Joseph Brandon Pigg, Samuel N. Potter, Assistant Public Advocates, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Stephen Bryant Humphress, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

This appeal asks us to determine whether the Commonwealth may seek relief under Kentucky Rules of Civil Procedure (CR) 60.02 to correct a judicial error, which occurred in a final judgment that erroneously grants a defendant jail-time custody credit for pretrial confinement. Because CR 60.02 is not an appropriate mechanism to correct a judicial error and because the Commonwealth could have timely raised this error in a direct appeal, we hold that it was not entitled to seek relief under CR 60.02.

## I. FACTUAL AND PROCEDURAL HISTORY.

Richard Lee Winstead was convicted in circuit court of third-degree burglary. While serving time on probation for that conviction, Winstead was arrested for violating the terms of his probation. Instead of revoking Winstead's probation, the trial court ordered him to serve ninety days in the county detention center on work release. While outside the detention center on work release, Winstead left his work site without permission. He was eventually apprehended in Kansas. Winstead ultimately pleaded guilty in the trial court to the resulting second-degree escape charge.

The trial court sentenced Winstead to prison for one year for the escape charge and ordered that sentence to run concur-

rently with a flagrant nonsupport charge but consecutively with any other "penitentiary sentence the defendant is currently serving." [1] In both its oral pronouncement of sentence on the escape conviction and in its written final judgment, the trial court credited Winstead with 234 days spent in custody before the imposition of the sentence for the escape conviction.

A little over one month after entry of the judgment, the Commonwealth filed a motion under CR 60.02 to vacate the judgment of conviction and sentence for escape. According to the Commonwealth, the trial court erred in the judgment by crediting Winstead with the 234 days of jail-time credit. According to the Commonwealth, Winstead was entitled to receive that jail-time credit against the bur-

glary sentence but not against his escape sentence.

Citing *Viers v. Commonwealth*,[2] Winstead opposed the Commonwealth's motion, arguing that any error in the granting of jail-time credit was a judicial error that could not be corrected more than ten days after the entry of the judgment. The trial court disagreed with Winstead, granted the Commonwealth's motion, and entered an amended judgment deleting the 234 days of jail-time credit. The trial court reasoned that granting jail-time credit to Winstead would "effectively run his sentence for the escape concurrently with the time he was and is serving in [the burglary case]. Such a result is in violation of the express provisions of KRS 532.110(3)."[3]

**1.** The "penitentiary sentence" to which the trial court referred here was the sentence imposed on the burglary conviction after the trial court revoked Winstead's probation and remanded him to incarceration for the remainder of a two-year sentence.

**2.** 52 S.W.3d 527 (Ky.2001).

**3.** Kentucky Revised Statutes (KRS) 532.110(3) provides, in relevant part, that "[t]he sentence imposed upon any person convicted of an escape or attempted escape offense shall run consecutively with any other sentence which the defendant must serve." The Court of Appeals agreed with the trial court that granting Winstead jail-time credit on the escape charge was an error, opining that "Winstead's sentence was in direct violation of the mandate of KRS 532.110(3) that sentences for escape must be served consecutively...."

We question whether KRS 532.110(3) was facially violated because the trial court ordered the escape conviction to run consecutive to the burglary sentence. But we acknowledge that the practical effect of granting 234 days jail-time credit toward a one-year sentence may have meant that the escape charge would effectively run concurrently with the underlying burglary charge.

Perhaps aware of the facial compliance with KRS 532.110(3), the Commonwealth also contends that Winstead's jail-time credit

award additionally violated KRS 532.120(3), which provides, in relevant part, that "[t]ime spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence shall be credited by the court imposing sentence toward service of the maximum term of imprisonment." As the official commentary to KRS 532.120 makes clear, this statutory subsection "provides credit only for the amount of time spent in custody for the offense of which an offender stands convicted." Since Winstead was in custody for the underlying burglary offense and, presumably, was receiving jail-time credit toward his sentence on that offense, the Commonwealth rationally reasons that Winstead was not entitled to double credit for the same period of time (credit for both the underlying burglary conviction and the escape conviction). *See, e.g., Belt v. Commonwealth*, 2 S.W.3d 790, 794 (Ky.App.1999) (holding that defendant "was not entitled to credit for the period set forth above because the time spent in custody during that period was related to a separate conviction."); *Martin v. Commonwealth*, 957 S.W.2d 262, 264 (Ky.App. 1997) ("Since Martin received credit for the time awaiting sentencing against the underlying misdemeanor sentence, he was not also entitled to credit against his one-year escape sentence. In fact, since KRS 532.110(4) required that Martin's sentence for the escape run consecutively with Martin's underlying

Winstead appealed the granting of the CR 60.02 motion and the reduction of his jail-time credit to the Court of Appeals. In a split decision, the Court of Appeals affirmed. The majority found that *Viers* was distinguishable and inapplicable because *Viers* was not based upon an escape charge. The majority opined that Winstead's sentence was illegal because it was contrary to the requirement in KRS 532.110(3) that sentences for escape must be served consecutively. So the Court of Appeals majority relied upon what it believed to be a factually similar case from Tennessee [4] to arrive at its decision to permit the trial court to grant the Commonwealth's CR 60.02 motion. The dissent disagreed, opining that the trial court committed a judicial error when it credited Winstead with the time he had spent in custody before sentencing. The dissent noted that *Viers* held that a judicial error cannot be corrected more than ten days after judgment is entered.

We granted Winstead's motion for discretionary review to consider more fully the issue of whether the Commonwealth— or, for that matter, a defendant—may use

CR 60.02 to correct jail-time credit errors in a final judgment more than ten days after the judgment is entered.[5] Since the improper awarding of jail-time credit was undeniably a judicial error, and since CR 60.02 is not an appropriate vehicle for the correction of judicial errors, we hold that CR 60.02 relief is unavailable under these facts. Because the Court of Appeals came to a contrary conclusion, we reverse the decision of the Court of Appeals and remand this matter to the trial court with instructions to reinstate the original judgment of conviction.

## II. ANALYSIS.

### A. Requirement for Trial Court to Award Jail–Time Credit.

In order to understand better the nature of the error in this case, we must first examine why a trial court must award jail-time custody credit in the first place.

The Executive Branch, in the form of the Department of Corrections—not the judicial branch—is ultimately responsible for determining when prisoners in its custody are eligible for release.[6] But the

---

misdemeanor sentence, he could not receive credit against both sentences.... Here, since Martin received credit against the misdemeanor sentence, to also give him credit against the escape sentence would constitute an inequity in his favor.").

The resolution of this appeal does not depend upon precisely which statute was violated when the trial court gave Winstead the jail-time credit at issue. All parties agree that the granting of jail-time credit toward the escape conviction was erroneous, as even Winstead concedes in his brief that "under the framework laid out in *Viers*, it is clear that giving Mr. Winstead 234 days of jail time credit was a judicial error." We will simply assume for purposes of this appeal, therefore, that the trial court erred when it relied upon the presentence investigation report (PSI) prepared by a probation and parole officer to award Winstead any jail-time credit on the escape conviction.

4. *State v. Burkhart*, 566 S.W.2d 871 (Tenn. 1978).

5. *See* CR 59.05 (requiring a motion to amend a judgment be served within ten days after entry of final judgment); Kentucky Rules of Criminal Procedure (RCr) 13.04 (providing that the Rules of Civil Procedure are applicable to criminal proceedings "to the extent not superseded by or inconsistent with" the Rules of Criminal Procedure).

6. *See, e.g.,* KRS 196.070(1)(d) (requiring the Commissioner of the Department of Corrections to "[d]etermine minimum, maximum, and conditional release dates of prisoners in accordance with KRS 197.045."); KRS 197.045 (authorizing Department of Corrections to award service credits for good conduct, etc.).

judicial branch is statutorily required to award applicable jail-time credit to defendants. KRS 532.120 generally governs jail-time credits. Originally enacted in 1974 as part of the enactment of the Kentucky Penal Code, KRS 532.120(3) provides, in relevant part, that "[t]ime spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence **shall be credited by the court imposing sentence** toward service of the maximum term of imprisonment." (Emphasis added.) The official commentary to KRS 532.120 makes plain that the trial court has an affirmative obligation to award any applicable jail-time credit: "The provision imposes a duty upon the trial judge to see that this credit is properly given. This is the surest way to guarantee against oversight of the credit."[7]

Unlike its predecessor statute, KRS 532.120 does not specify how a trial court can calculate the amount of pretrial jail-time credit a defendant should receive, or explicitly require the Department of Cor-

rections to calculate jail-time credit.[8] Our research reveals, however, that the Department of Corrections is still required by law to inform a trial court about how much pretrial jail-time credit it calculates a defendant has accrued.

The applicable administrative regulation, 501 Kentucky Administrative Regulation (KAR) 6:270 § 1, incorporates by reference certain policies of the Department of Probation and Parole, which is a division of the Department of Corrections.[9] Among those current policies incorporated by reference is Policy 28–01–03, effective May 26, 2005. That policy sets forth, among other things, what must be included in a PSI, which is called a "presentence investigation" in the policy. Section II(B)(1)(j) of the policy requires "[a]ny applicable jail custody credit" to be included "in the body of the presentence investigation" report. So the Department of Corrections is obligated by law to provide trial courts with jail-time credit calculations.

Trial courts, in turn, are required to award defendants the proper amount of

---

7. An argument could be made that the General Assembly's directive to courts to award jail credit information is an impermissible intrusion into the judiciary's power to control the contents of its orders and judgments, thereby violating the separation of powers doctrine, especially since the ultimate release date of a prisoner convicted of a felony is within the purview of the Executive Branch, in the form of the Department of Corrections. But we decline to explore further on our own initiative this interesting issue because no party has raised it.

8. Former KRS 431.155(1) discussed how to calculate jail-time credit and subsection (3) of that statute provided that "[t]he department of corrections is charged with the responsibility of determining the credit to be applied under this section." However, KRS 431.155 was repealed in 1974. *See* 1974 Ky. Acts Ch. 406 § 336. The same legislative act which repealed KRS 431.155 created the Kentucky

Penal Code. *See* KRS 500.010 ("KRS Chapters 500 to 534 shall be known as the Kentucky Penal Code.") (created in 1974 Ky. Acts. Ch. 406 § 1). Despite the omission of language requiring the Department of Corrections to calculate jail-time credit, and despite the seeming requirement that trial courts must award jail-time credit, the official commentary to KRS 532.120 recites that prior law, including KRS 431.155, was adopted into KRS 532.120 "[i]n every significant way...."

9. 501 KAR 6:270 § 1 provides, in relevant part, that "Probation and Parole Policies and Procedures, September 12, 2008, are incorporated by reference." (quotation marks omitted). Although the policies themselves unfortunately are not contained within the administrative regulation, the regulation provides that the policies generally are subject to public inspection.

jail-time credit.[10] KRS 532.120 requires a trial court to award applicable jail-time credit, and the commentary to that statute describes that requirement as a "duty." Although KRS 532.120 does not facially require the trial court's award of jail-time credit to be inserted into the final judgment of conviction, our precedent at least arguably requires it to be included in the final judgment.

In a decision rendered shortly after the enactment of KRS 532.120, a defendant argued, among other things, that the trial court had failed to award him credit in its final judgment for time spent in custody before sentencing. Based upon that issue and the trial court's failure to obtain a recent PSI, we remanded the case to the trial court, tersely holding that "KRS 532.120 entitles him to that credit **and the judgment will so provide**."[11] Although we need not decide in this case if it is absolutely required, it appears, therefore, that it is generally expected that the final judgment of conviction will include information as to how much, if any, pretrial jail-time credit a defendant is due.[12]

■ If either the defendant or the Commonwealth believes the trial court's jail-time credit calculation to be erroneous, either the Commonwealth or the defendant may timely raise that issue on direct appeal.[13] Unfortunately, although Winstead and the Commonwealth both now agree that the trial court erred by awarding Winstead jail-time credit, that issue was not raised in a timely direct appeal.[14] Accordingly, the question we must answer in the appeal at hand is whether CR 60.02 is a proper procedural mechanism to challenge a trial court's allegedly improper calculation of jail-time credit once the time to file a direct appeal has elapsed.

## B. Judicial Error v. Clerical Error.

■ Generally speaking, a trial court lacks power to amend a judgment ten days

10. Obviously, a party who believes Probation and Parole's jail-time credit calculation to be incorrect may object. After hearing whatever argument and or testimony it believes necessary, a trial court would then determine what it believed the proper amount of jail-time credit to be. So this opinion should in no manner be construed to mean that a trial court is invariably bound to award jail-time credit in accordance with the calculations performed by Probation and Parole.

11. *Doolan v. Commonwealth*, 566 S.W.2d 413, 415 (Ky.1978) (emphasis added).

12. *See* LESLIE W. ABRAMSON, 9 KY. PRAC.CRIM. PRAC. & PROC. § 32:42 n.2 (2009–2010) (judgment of conviction "should include the period and conditions of probation or conditional discharge, the basis for denying probation or conditional discharge, the nature and disposition of any other matters raised at sentencing, **and the amount of sentence credit to which the defendant is entitled as a result of pretrial confinement.**") (emphasis added).

13. It is beyond cavil that a defendant may raise an alleged improper calculation of jail-time credit on direct appeal. *See, e.g.*, *Doo-*

*lan*, 566 S.W.2d at 415. Precedent generally affords the Commonwealth a right to appeal the final sentence imposed by the trial court. *Collins v. Commonwealth*, 973 S.W.2d 50, 51 (Ky.1998) ("Stella Marie Collins raises a single issue in this appeal: whether an appeal by the Commonwealth of a defendant's sentence in a criminal case is barred by double jeopardy principles. We conclude that it is not...."). So the Commonwealth presumably could attack what it believes to be an improper award of jail-time credit in a timely-filed direct appeal.

14. The trial court's final judgment of conviction was entered by the clerk on August 23, 2006. The Commonwealth's CR 60.02 motion recites that it was submitted on September 29, 2006, and was filed by the circuit court clerk on October 2, 2006. A party generally has thirty days after the date of entry of judgment in which to appeal, *see* RCr 12.04(3), so the Commonwealth's time to file an appeal had expired by the time it submitted its CR 60.02 motion.

after the entry of that judgment.[15] An exception to that ten-day rule exists for clerical errors. RCr 10.10 expressly permits a trial court to correct a clerical error "at any time on its own initiative or on the motion of any party. . . ." *Viers* provides clear guidance about how to determine if an error is clerical or judicial in nature:

> the question of whether an error is "judicial" or "clerical" turns on whether the amended judgment embodies the trial court's oral judgment as expressed in the record. If it does, then the error is clerical in that the amended judgment either corrects language that is inconsistent with the oral judgment, or supplies language that was inadvertently omitted from the oral judgment. But if it does not, then the error must be judicial.[16]

In the case at hand, the parties agree that the original written final judgment accurately reflected the trial court's oral pronouncement at sentencing that Winstead would be given 234 days of jail-time credit. So under the clear and unambiguous holding in *Viers*, any error in giving Winstead jail-time credit was a judicial error.

## C. Application of *Viers*.

The Court of Appeals cited *Viers* and acknowledged the discussion contained in *Viers* regarding whether an error is clerical or judicial in nature. But the Court of Appeals believed *Viers* was not controlling because *Viers* did not involve an escape charge. And the Court of Appeals believed the case at hand involved an illegal sentence, while *Viers* did not.

Undeniably, *Viers* did not involve an escape charge. But that is a distinction that makes no true difference because the precise nature of the underlying criminal offense does not affect our clear explanation in *Viers* about what makes an error judicial in nature. And, contrary to the viewpoint of the Court of Appeals and the trial court, the sentence in *Viers* was, at least arguably, contrary to a statutory directive. As we noted in *Viers*, the PSI apparently "failed to indicate that Viers had been in jail while serving a federal sentence. After this oversight came to its attention, the trial court amended the judgment on the basis that it had no authority to give jail-credit for time spent serving a federal sentence. *See* KRS 532.120(3)."[17] So *Viers* is directly on point, and the Court of Appeals and trial court erred by declining to apply it to the case at hand.

■ Application of *Viers* to the facts of this case leads to the inescapable conclusion that the error in the case at hand was judicial in nature.[18] That inarguable conclusion, however, does not entirely resolve

---

15. *See, e.g., McMurray v. Commonwealth*, 682 S.W.2d 794, 795 (Ky.App.1985) ("the trial court erred in ignoring the general principle, recognized by the commonwealth appellee in its brief, that a trial court loses control of its judgment 10 days after its entry. *Silverburg v. Commonwealth*, Ky., 587 S.W.2d 241 (1979). When our criminal rules do not supersede our civil rules or are not inconsistent with them, our civil rules apply. Since our criminal rules do not provide for trial court control of criminal judgments, our civil rule 10 day control provision applies. *See* RCr 1.10, RCr 13.04 and CR 59.05. The trial court could not amend its original judgment since 10 days had obviously passed when it did so.").

16. *Viers*, 52 S.W.3d at 529 (citations omitted).

17. *Id.*

18. The fact that the trial court apparently relied in good faith on the PSI when awarding jail-time credit to Winstead does not in any manner mean that the error in this case is a mere scrivener's error. Although PSI reports are useful tools and are prepared in good faith by the Department of Probation and Parole as a valuable resource for trial court judges, it is ultimately a judge's responsibility under our law to calculate and award accurately any jail-time credit owed to a defendant.

this appeal because *Viers* did not address whether a party—a defendant in a typical case, the Commonwealth in the case at hand—may use CR 60.02 to correct an erroneous jail-time credit award after the time for filing an appeal has elapsed. Instead, *Viers* involved only the application and scope of RCr 10.10, which governs correction of clerical errors.[19]

*Viers* stands for two important propositions. First, it elucidates the difference between a judicial error and a clerical error. Second, it firmly holds that judicial errors are not correctable under RCr 10.10.

When applied to this case, the holding in *Viers* means that the error in this case was judicial in nature and, consequently, could not have been corrected via RCr 10.10. But *Viers* leaves unanswered the question of whether a judicial error is correctable under CR 60.02. So we must now turn to the heart of this appeal: is CR 60.02 a device for an aggrieved party to challenge a judicial error? After careful consideration, we conclude that it is not.

### D. Beyond *Viers:* Is CR 60.02 a Proper Avenue for Relief from Judicial Errors?

■ As a prefatory matter, we must first note that the fact that the case at hand is a criminal action does not foreclose the availability of CR 60.02 relief since that rule applies to both civil and criminal cases.[20] The question becomes, therefore, whether CR 60.02 is a proper mechanism for seeking relief from a judicial error after the time for filing a direct appeal has expired.

■■ CR 60.02 is a codification of the ancient common law writ of *coram nobis.*[21] CR 60.02 did not expand the scope of the writ of *coram nobis.*[22] So in order to be cognizable, a CR 60.02 motion must fall within at least one of the three purposes of the writ of *coram nobis:*

> The purpose of *coram nobis* was to bring pronounced judgment errors before the court which (1) had not been heard or litigated, (2) were not known or could not have been known by the party through the exercise of due diligence, or (3) the party was prevented from presenting due to duress, fear, or some other sufficient cause.[23]

Consequently, relief under CR 60.02 "is available only to resolve issues that could not have been raised at trial, on direct appeal, or by a motion for relief under RCr 11.42."[24]

---

19. *See id.* ("we hold that the trial court erred in amending its judgment as the correction of clerical error under RCr 10.10.").

20. *See, e.g., Fanelli v. Commonwealth,* 423 S.W.2d 255, 257 (Ky.1968) ("CR 60.02 is available in both civil and criminal proceedings.").

21. *Baze v. Commonwealth,* 276 S.W.3d 761, 765 (Ky.2008).

22. *Id.* at 766.

23. *Id.* at 765–66.

24. *Bowling v. Commonwealth,* 163 S.W.3d 361, 365 (Ky.2005). *See also Gross v. Com-* *monwealth,* 648 S.W.2d 853, 856 (Ky.1983) (holding that CR 60.02 "is for relief that is not available by direct appeal and not available under RCr 11.42. The movant must demonstrate why he is entitled to this special, extraordinary relief.... CR 60.02 was enacted as a substitute for the common law writ of *coram nobis.* The purpose of such a writ was to bring before the court that pronounced judgment errors in matter of fact which (1) had not been put into issue or passed on, (2) were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court, or (3) which the party was prevented from so presenting by duress, fear, or other sufficient cause.").

There is no indication in this case that had it exercised due diligence, the Commonwealth could not have raised the improper awarding of jail-time credit to Winstead on direct appeal. So CR 60.02 is an inappropriate vehicle for seeking jail-time credit relief in this case.

 What is more, the writ of *coram nobis* "was aimed at correcting factual errors, not legal errors...."[25] And current precedent holds that CR 60.02 is not available to correct a judicial error.[26] So CR 60.02 relief is inappropriate in this case for two reasons: (1) any error in awarding Winstead jail-time credit could easily have been raised via direct appeal had the Commonwealth exercised due diligence, and (2) precedent holds that CR 60.02 is not available as a vehicle to correct judicial errors.[27]

We are aware, as was the trial court, that current precedent's conclusion that CR 60.02 cannot properly be used to correct judicial errors seems to contradict the Court of Appeals' three-decades old, terse opinion in *Duncan v. Commonwealth.*[28]

In *Duncan*, the defendant filed a motion for the trial court to "amend its judgment to reflect credit for all time spent in custody prior to the entry of the final judgment."[29] That motion was filed about eighteen months after sentencing.[30] Although the motion for additional jail-time credit did not openly invoke CR 60.02, the Court of Appeals held that it was "evident that the appellant's motion was made pursuant to CR 60.02 rather than RCr 11.42."[31] The Court of Appeals' terse opinion did not analyze whether any error in the jail-time credit award was judicial or clerical in nature. Instead, the Court of Appeals held that Duncan's motion was untimely because it was made more than one year after the trial court entered its final judgment, in contravention of CR 60.02's one-year time limit for motions based upon mistake.[32]

But *Duncan* does not address our predecessor Court's prior holdings in *Roberts* and *James* that CR 60.02 is not a proper mechanism to attempt to correct judicial errors. And Duncan himself did not actually believe he had filed a CR 60.02 motion.

25. *Leonard v. Commonwealth,* 279 S.W.3d 151, 161 (Ky.2009).

26. *See McMillen v. Commonwealth,* 717 S.W.2d 508, 509 (Ky.App.1986) ("it has been held that relief under CR 60.02 is not available for judicial errors or mistakes."), citing *Roberts v. Osborne,* 339 S.W.2d 442 (Ky. 1960), and *James v. Hillerich & Bradsby Company,* 299 S.W.2d 92 (Ky.1956); *Toyota Motor Mfg., Kentucky, Inc. v. Johnson,* 323 S.W.3d 646 (Ky.2010) ("And some Kentucky cases generally state that it is inappropriate to grant relief under CR 60.02(a) on the basis of judicial mistake."), *citing McMillen, James,* and *Roberts.*

27. Normally, a trial court's ruling on a CR 60.02 motion is reviewed under the deferential abuse of discretion standard. *See, e.g., Brown v. Commonwealth,* 932 S.W.2d 359, 362 (Ky.1996). But that standard is somewhat inapt in this case because the trial court had no discretion to exercise because CR 60.02 is an inappropriate tool to correct a judicial error. Regardless, the trial court's decision to grant relief based upon an improperly filed CR 60.02 motion is an abuse of discretion.

28. 614 S.W.2d 701 (Ky.App.1980).

29. *Id.* at 701.

30. *Id.* at 702 ("Here, the appellant waited a year and a half from the time of the entry of the trial court's judgment to request such relief.").

31. *Id.* at 701.

32. *Id.* at 702. CR 60.02 provides, in relevant part, that motions based upon mistake (*i.e.,* CR 60.02(a)) must be made "not more than one year after the judgment, order, or proceeding was entered or taken."

The Court of Appeals merely construed the motion to have been brought under CR 60.02.

*Duncan* has been cited in many opinions, principally unpublished, for the proposition that a motion for correction of an allegedly erroneous jail-time credit award is treated as a motion brought under CR 60.02.[33] But, as we have already explained, CR 60.02 is unavailable to correct judicial errors and is unavailable to correct an error that due diligence would have permitted to have been raised on direct appeal. So to the extent that *Duncan* stands for the proposition that CR 60.02 is a proper procedural vehicle to address judicial errors, such as the improper awarding of jail-time credit, *Duncan* and its progeny are overruled.[34]

By concluding that CR 60.02 relief is unavailable to correct judicial errors, we by no means endorse the admittedly improper jail-time credit award in this case. But the Commonwealth's decision to attempt to rectify that error via CR 60.02 runs counter to two lines of clear precedent: one holds that CR 60.02 is unavailable to rectify judicial errors and the other holds that CR 60.02 relief does not lie to correct errors that were, or could have been, raised on direct appeal. So correcting the judicial error in this one case would require us to overturn well-established precedent, destabilizing this entire area of the law. We refuse to jettison settled precedent and to bend our rules in order to grant relief to the Commonwealth

in this one case, especially when the Commonwealth itself failed to object to the error in a timely manner.

### E. Improper Jail–Time Credit Award is Not an Illegal Sentence.

 Perhaps recognizing that the error in this case is a judicial mistake under *Viers*, the Commonwealth contends that the trial court had the ability to correct Winstead's sentence "at any time" because that sentence was illegal; and an illegal sentence may be corrected at any time. We reject this argument because the award of jail-time credit is not part of Winstead's sentence.

We accept that granting Winstead jail-time credit in this case was illegal. Something is *illegal* if it is "[f]orbidden by law...."[35] Even Winstead admits in his brief that the trial court's decision to grant him jail-time credit was "directly contrary to KRS 532.120(3)." So we accept that the granting of jail-time credit to Winstead was, strictly speaking, illegal. But, nonetheless, we believe that the jail-time credit award was not part of Winstead's **sentence**.

As Winstead's attorney asserted at oral argument, an award of jail-time credit is not actually a part of a sentence imposed upon a defendant even though the jail-time credit may be included in the final judgment of conviction. A leading legal dictionary defines *sentence* as "the punishment imposed on a criminal wrongdoer...."[36] Similarly, although it did so in a case factually distinguishable from the one at

---

33. *See, e.g., Burden v. Commonwealth,* No.2009–CA–002151–MR, 2010 WL 3515815 (Ky.App. Sept. 10, 2010); *Lane v. Commonwealth,* No.2004–CA–000966–MR, 2005 WL 928422 (Ky.App. Apr. 22, 2005); *Seadler v. Commonwealth,* No.2002–CA–001452–MR, 2003 WL 21245812 (Ky.App. May 30, 2003).

34. In the unlikely, rare event that the trial court's oral award of jail-time credit conflicts

with its written judgment, the proper method of seeking relief would be via RCr 10.10's provision for correcting clerical errors "at any time...."

35. BLACK'S LAW DICTIONARY (9th ed.2009).

36. *Id.*

hand, our predecessor Court noted that "[a] 'sentence' may be either a fine or imprisonment, or both." [37]

Jail-time credit is not in any sense a punishment imposed upon a criminal wrongdoer, nor is it either a fine or a term of imprisonment. Instead, a jail-time credit award is information that helps the Department of Corrections carry out its statutorily mandated role to determine the minimum and maximum expiration dates for incarcerated offenders. [38] Simply put, the dictionary definition of *sentence* and our predecessor court's definition of what constitutes a *sentence* both lead to the conclusion that an award of jail-time credit is not actually part of a defendant's sen-tence even if the jail-time credit award is included in the final judgment of conviction. [39]

In concluding that the erroneous jail-time credit was an illegal **sentence,** it appears that the Court of Appeals focused on whether the award of jail-time credit was contrary to statutory directives—that is, illegal—but failed to focus upon whether the award of jail-time credit was actually part of Winstead's **sentence.** Because we have already determined that jail-time credit is not part of a defendant's sentence, precedent holding that an illegal sentence may be corrected "at any time" [40] is irrelevant because, as we discussed with the parties at oral argument, the jail-time

**37.** *Commonwealth v. Ballinger,* 412 S.W.2d 576, 578 (Ky.1967). *But see Viers,* 52 S.W.3d at 529 ("In the case at bar, the sentence imposed at sentencing—including the jail time credit—is clearly and accurately reflected in the subsequent written judgment."). The issue of what actually constitutes a **sentence** was not truly at issue in *Viers.* Instead, as previously explained, the only real issue in that case was whether an erroneous jail-time credit was a "clerical error" that could be corrected "at any time" under RCr 10.10. As noted previously in this opinion, we adhere to our holding in *Viers* on what differentiates a judicial error from a clerical error. But we did not intend in any way in *Viers* to rule definitively on whether jail-time credit is actually part of a criminal **sentence,** especially since the word **sentence** does not appear in RCr 10.10. To clarify any seeming conflict between *Viers* and the case at hand, however, we now expressly depart from any unfortunate dicta in *Viers* (and any other similar case) that could be construed to constitute a holding that jail-time credit is part of a criminal defendant's **sentence.**

**38.** *See* KRS 196.070(1)(d) (requiring the Commissioner of the Department of Corrections to "[d]etermine minimum, maximum, and conditional release dates of prisoners in accordance with KRS 197.045."); KRS 197.045 (authorizing Department of Corrections to award service credits for good conduct, etc.).

**39.** *Cf. State v. Cockerham,* 266 Kan. 981, 975 P.2d 1204, 1208 (1999) (holding that modify-ing Kansas sentence to increase jail-time credit on Kansas offense for time defendant had been incarcerated in Kentucky on an unrelated offense "is not a modification of a defendant's Kansas sentence."); *State v. Smith,* 33 Kan.App.2d 554, 105 P.3d 738, 740–41 (2005) (reduction in jail-time credit did not modify defendant's sentence). *But see, e.g., State v. Mancino,* 714 So.2d 429, 433 (Fla.1998) ("we agree ... that a sentence that does not mandate credit for time served would be illegal since a trial court has no discretion to impose a sentence without crediting a defendant with time served."); *Doolittle v. State,* 154 P.3d 350, 356 (Wyo.2007) ("A sentence which does not include proper credit for presentence incarceration is illegal.").

**40.** *See Skiles v. Commonwealth,* 757 S.W.2d 212, 215 (Ky.App.1988). We have expressed at least some skepticism about whether the Court of Appeals painted with too broad a brush when it declared that an illegal sentence could be corrected "at any time." *See Neace v. Commonwealth,* 978 S.W.2d 319, 322 (Ky.1998) ("It is unnecessary to consider whether the *Skiles* 'at any time' correction standard is too liberal or far-reaching.").

With some rare exceptions, the law generally requires parties to assert diligently and timely their rights. Even CR 60.02, which the Commonwealth attempted to utilize in this case, contains some express time limits (one year if based upon mistake, newly discovered evidence, etc.) and some implied time limits (for

credit award is not a part of Winstead's actual sentence.[41]

### F. This Case Must Be Remanded to the Circuit Court.

Finally, the only issue properly before us in this case is whether the Commonwealth properly sought CR 60.02 relief after the time to file a direct appeal had expired in order to attempt to correct the erroneous awarding of jail-time credit to Winstead. As we have discussed, CR 60.02 is unavailable in those types of situations. So the trial court erred by granting the Commonwealth's CR 60.02 motion, and the Court of Appeals erred by affirming that decision. The case must be remanded to the trial court with instructions to reinstate the original judgment of conviction.[42]

### III. CONCLUSION.

For the foregoing reasons, the opinion of the Court of Appeals is reversed; and this case is remanded to the trial court for proceedings consistent with this opinion.

All sitting. ABRAMSON, NOBLE, SCHRODER, and VENTERS, JJ., concur. CUNNINGHAM, J., dissents by separate opinion in which SCOTT, J., joins.

**CUNNINGHAM, J., dissenting:**

The ruling of the majority today deprives both the Commonwealth and a criminal defendant of the means of correcting an illegal sentence after the time for the direct appeal has expired. Thus, it violates both the due process clause of the Fourteenth Amendment of the U.S. Constitution and Section 14 of the Kentucky Constitution. Therefore, I respectfully dissent.

Civil Rule 60.02 and its case law progeny were never intended to open gates to endless litigation. Finality is crucial. And I agree that, as late as 2008, we reasserted that this provision is not intended to "relitigate previously determined issues." *Baze v. Commonwealth,* 276 S.W.3d 761, 765 (Ky.2008). However, even in the constrictive language of *Baze* and other cases bearing on point, we allowed that the doctrine of *coram nobis,* codified by CR 60.02, was available to deal with "judgment errors which had not been heard or litigated."

We have judgment error in this case, and it has not been heard or litigated until this 60.02.

---

example, motions under the catch-all subsection (f) must be made "within a reasonable time...."). Adoption of the "at any time" standard would appear to encourage, or at least would not punish, sloth or negligence. We question, therefore, whether an illegal sentence may always be subject to correction "at any time." But we need not definitively resolve that issue in the case at hand because the awarding of jail-time credit is not actually part of a defendant's **sentence.**

**41.** An example of a truly illegal **sentence** is found in our recent opinion in *McClanahan v. Commonwealth,* 308 S.W.3d 694 (Ky.2010). In *McClanahan,* the defendant entered into a plea agreement, which had the ultimate effect of having the defendant sentenced to thirty-five years' imprisonment, even though the statutory maximum punishment to which the

defendant could have been subjected was twenty years' imprisonment. *Id.* at 699. Obviously, the case at hand is markedly different in that Winstead's sentence of one year of imprisonment, to be served consecutively to the burglary conviction, fell within the permissible statutory range for that offense. *See* KRS 520.030(2) (classifying second-degree escape as a Class D felony); KRS 532.060(2)(d) (providing a penalty range of one to five years' imprisonment for a Class D felony).

**42.** Although the issue is important, we will not issue an advisory opinion concerning what, if anything, either a defendant or the Commonwealth properly could file after the time for filing a direct appeal has expired in order to seek to amend an allegedly improper award of jail-time credit.

CR 60.02 states in part that "a court may, upon such terms as are just, relieve a party or his legal representative from the final judgment, order, or proceeding upon ... mistake, inadvertence, surprise, or excusable neglect." BLACK'S LAW DICTIONARY (8th ed.2004) defines "inadvertence" as "[a]n accidental oversight; a result of carelessness." That was exactly what happened here. Also, the action was taken by the Commonwealth within the one-year limitation required. Therefore, it seems clear to me that the relief being sought by the Commonwealth in this case clearly falls within the intent and purpose of CR 60.02.

I take serious issue with the majority's statement that jail time credit is not part of the sentence. The short provision of KRS 532.120(3), which affords pre-trial jail credit toward time to be served, mentions the word "sentence" five times. Through this statutory command, jail credit is made part of the sentence. Visit any circuit court of the 120 counties of this Commonwealth and listen as the circuit judge pronounces sentence. In the same breath as the years of imprisonment are imposed, the amount of jail credit falls hard upon. The *Doolan* case, cited by the majority, requires jail credit to be in the judgment of sentencing.

It should be remembered that on this day the Commonwealth of Kentucky is seeking relief. My experience teaches me that, in most efforts, it will be a criminal defendant who is shorted jail time credit— sometimes affecting substantially his or her sentence. In many cases, such mistake or inadvertence is not discovered until the defendant is serving time and more than 30 days have elapsed. If the defendant is not allowed to utilize CR 60.02 to correct this illegal sentence, then he or she will be serving an unlawful sentence.[43]

I believe that both the Commonwealth and the defendant are in great need of this mechanism to correct an illegal sentence. It should not be complicated. We should narrowly hold that error in jail credit can be corrected through the use of CR 60.02.

Therefore, I respectfully dissent and would affirm.

SCOTT, J., joins this dissent.

---

**43.** Arguably, a defendant could challenge the failure to give proper jail time credit in a habeas action pursuant to KRS 419.020. This action would have to wait until near the end of the sentence. There is some support for this. 39 *C.J.S. Habeas Corpus* § 174. However, it gets complicated. The parole eligibility date is computed from the sentence on the judgment at time of commitment. Therefore, the defendant may be deprived of an earlier release via parole because of the failure to give the appropriate jail credit. In any case, the Commonwealth would not, as here, have any recourse for correction.