**Peter BARD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000283–DG.

Supreme Court of Kentucky.

Oct. 27, 2011.

Rehearing Denied Feb. 23, 2012.

As Modified March 16, 2012.

Daniel T. Goyette, Louisville Metro Public Defender, James David Niehaus, Deputy Appellate Defender, Angela Marie Rea, Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Kentucky Attorney General, James Coleman Shackelford, Assistant Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

This case presents the question of whether the Department of Corrections can correct an alleged error in the calculation of a presentencing custody credit after the calculation is incorporated into the court's final judgment. Here, the Jefferson Circuit Court found that the Department of Corrections had the authority to modify the defendant's presentencing custody credit six years after it was originally established. The Court of Appeals affirmed. We granted discretionary review and, because the Department of Corrections could not correct the alleged error, we reverse.

## I. BACKGROUND

In 1993, Peter Bard, Appellant, was charged with the murder of a deputy sheriff. However, he was determined to be incompetent to stand trial and the charges against him were dismissed without prejudice. Thereafter, he was involuntarily institutionalized for treatment on two occasions, totaling 1,637 days. By 2000, he had regained competency and was then re-indicted for the murder. At trial, the jury

found him guilty but mentally ill of first-degree manslaughter and recommended a twenty-year sentence.

On April 8, 2002, the Jefferson Circuit Court conducted the sentencing hearing.[1] At the hearing, the trial court reviewed the contents of the presentence investigation report (PSI) with Appellant and his counsel. Following this review, the court orally imposed the recommended sentence.

Although not discussed during the hearing, the trial court's written Jury Trial Order and Judgment of Conviction (and Sentence) specifically addressed Appellant's presentencing custody credit; providing that "[t]he Defendant shall be entitled to credit for time spent in custody prior to sentencing, said time to be calculated by the Division of Probation and Parole. KRS 532.120." At the time of sentencing, Probation and Parole calculated Appellant's presentencing custody credit at 3,086 days. This calculation included credit for the period of time during which Appellant had been involuntarily hospitalized for treatment, although not then under indictment.[2] While the facts raise questions of legal error in the inclusion of the involuntary commitment time, *see Todd, infra* for a similar inclusion, they do not support clerical error. *See* RCr 10.10.

Probation and Parole recorded its calculation of Appellant's presentencing custody credit in a document entitled "Documentation Custody Time Credit" (time credit sheet). The time credit sheet states that it was submitted to the trial court on August 8, 2002, the date of the sentencing hearing. According to Appellant's counsel, the time credit sheet was attached to the PSI that he and the court reviewed at sentencing.

Approximately six years thereafter, the Department of Corrections (Corrections) determined that Appellant had completed his prison sentence and released him from custody. Appellant, however, was transported directly to Central State Hospital, where he was once again involuntarily hospitalized pursuant to a mental inquest warrant. Several days later, Corrections asserted the alleged error in Probation and Parole's calculation and concluded that Appellant should not have been discharged. The Warden of the Kentucky State Reformatory then issued a warrant for Appellant's return to prison due to "inadvertent release." Appellant was picked up from Central State Hospital and taken back to the prison.

Five days after Appellant's reincarceration, Probation and Parole submitted an amended time credit sheet to the Jefferson Circuit Court for approval. The amended time sheet reduced Appellant's presentencing custody credit from 3,086 days to 1,449 days, the days Appellant was actually held while charged. The chief judge approved and signed this amended time credit sheet and placed it in the court record. Corrections also amended its record of Appellant's presentencing custody credit by gen-

1. Justice Lisabeth Abramson, who at the time was a Jefferson Circuit Court Judge, presided over Appellant's trial and sentencing and ordered the credit as determined by Probation and Parole. Judge Mitchell Perry presided over the later proceedings concerning the Department of Corrections' changes to Appellant's custody credit.

2. *See Commonwealth v. Todd,* 12 S.W.3d 695, 697 (Ky.App.1999) (another similar case out of Jefferson County and holding that a defen- dant is not entitled to custody credit for the period of time during which he was involuntarily hospitalized while not under indictment); *but see Commonwealth v. Nicely,* 326 S.W.3d 441, 449–50 (Ky.2010) (holding that a defendant is entitled to custody credit on the original charge for time served during drug court sanctions). Appellant, however, does not argue that he was legally entitled to credit for this time, just that any error cannot now be corrected.

erating a new Resident Record Card, which set his credit at 1,449 days.

Thereafter, Appellant filed a motion requesting that the trial court conduct an investigation of the circumstances resulting in his reincarceration. The court denied the motion, ruling that it would not address issues related to custody credit until he had exhausted his administrative remedies with Corrections.

Subsequently, Appellant filed a motion requesting that the trial court deem the judgment against him satisfied, in effect a motion for habeas corpus. *Cf. Commonwealth v. Gaddie*, 239 S.W.3d 59 (Ky.2007). The court, however, denied this motion, finding that Appellant had failed to prove that the judgment against him had been satisfied. The trial court also noted that it had previously ruled that it "lacked jurisdiction over the issue" and that "Probation and Parole is the body responsible for calculating and determining [Appellant's] credit [for] time served."

Appellant then sought review of the trial court's order as a matter of right. The Court of Appeals affirmed, finding the trial court correctly denied Appellant's motion because he failed to exhaust his administrative remedies with Corrections.

We then granted discretionary review.

## II. ANALYSIS

Appellant asserts that the trial court erred when it ruled that he has not satisfied the judgment against him, contending that the trial court's sentence incorporated Probation and Parole's allegedly erroneous calculation of presentencing custody credit and that Corrections lacked authority to correct the alleged error. To address this contention, it is necessary to understand the separate responsibilities of Corrections and the trial court with regard to the presentencing custody credit during the time periods concerned.[3]

█ A defendant is entitled to have his prison sentence reduced by the amount of time he spent in custody before sentencing related to the crime for which he has been sentenced. KRS 532.120(3). Until it was amended in 2011, KRS 532.120(3) provided that a defendant's presentencing custody credit "shall be credited *by the court imposing sentence* toward service of the maximum term of imprisonment." (Emphasis added). The official commentary to KRS 532.120 underscores the importance of the court's role in awarding presentencing custody credit. The commentary states that KRS 532.120(3) "imposes a duty upon the trial judge to see that this credit is properly given." Our precedent thus holds that this duty requires courts to address presentencing custody credit in their judgments. *Doolan v. Commonwealth*, 566 S.W.2d 413, 415 (Ky.1978).

█ In order to assist the trial court in awarding the proper amount of presentencing custody credit, Corrections (through its Division of Probation and Parole) is required to provide the court with a calculation of the credit to which it believes a defendant is entitled. KRS 532.050(2)(b). Thus, in all felony cases, before the trial court may impose its sen-

---

3. KRS 532.120(3) was amended in 2011 to provide that presentencing custody credit "shall be credited *by the Department of Corrections ... in cases involving a felony sentence* and by the sentencing court in all other cases." (Emphasis added). Therefore, effective June 8, 2011, the responsibility for crediting a defendant for presentencing jail-time is vested in the Department of Corrections, instead of the trial court, in all felony cases. This provision was not in effect at the time Appellant was sentenced or reincarcerated. As a result, our analysis is based on the prior version of KRS 532.120(3) and the caselaw interpreting it.

tence, it must obtain a PSI from Probation and Parole. KRS 532.050(1). The PSI is required to contain an analysis of the defendant's background and a preliminary calculation of presentencing custody credit. KRS § 532.050(2)(a)–(b).[4] The court has a mandatory obligation to obtain and review the PSI as a prerequisite to entry of a judgment. *Brewer v. Commonwealth*, 550 S.W.2d 474, 476 (Ky.1977).

Moreover, the court is required to review the contents of the PSI with the defendant at sentencing. KRS 532.050(6). Should the defendant dispute any of the information contained in the PSI, including Probation and Parole's preliminary calculation of the presentencing custody credit, the court may hear evidence and make appropriate findings. KRS 532.050(6); *see also Winstead v. Commonwealth*, 327 S.W.3d 479, 485 n. 10 (Ky.2010) (noting that the court is not bound by Probation and Parole's calculation).

Thus, prior to June 8, 2011, the responsibility to award presentencing custody credit belonged exclusively to the trial court. *Mills v. Commonwealth*, No. 2004–SC–0140–MR, 2005 WL 2317982, at *2 (Ky. Sept. 22, 2005). In *Mills*, the defendant objected to the amount of presentencing custody credit set forth in the PSI because it did not include credit for time served on his prior reversed conviction. *Id.* at *1. Based on the testimony of the probation officer, the trial court declined to award the defendant credit for time served on the reversed conviction, concluding that Corrections was responsible for awarding that credit. *Id.* at *1–*2. We reversed the trial court and held that, under the plain language of KRS 532.120(3), "it is the responsibility of neither the Department of Corrections nor the Division of Probation and Parole ... to award the appropriate jail time credit. That responsibility is vested in the trial court." *Id.* at *2. *See also Winstead*, 327 S.W.3d 479, 487 n. 18 (Ky.2010) (noting that, "[a]lthough PSI reports are useful tools ... prepared in good faith by the Department of Probation and Parole ..., it is ultimately a judge's responsibility under our law to calculate and award accurately any jail-time credit owed to a defendant.").

██ Considering the plain language of KRS 532.120(3), as it then existed, and this Court's holding in *Mills* and *Winstead*, it is clear that the responsibility to credit a defendant for presentencing jail time belonged exclusively to the trial court at the time of Appellant's sentencing and reincarceration. Corrections' role was simply to assist the trial court in determining the proper amount of credit by providing its calculations. No statutory authority or caselaw granted Corrections the power to set or modify presentencing custody credit.

In this case, the trial court's sentence incorporated by reference Probation and Parole's calculation, which stated that Appellant had served 3,086 days in custody prior to sentencing. Six years later, Corrections reduced Appellant's presentencing custody credit to 1,449 days and reincarcerated him based on this reduced credit. Because the duty to award presentencing custody credit was vested in the trial court, Corrections was not authorized to modify Appellant's credit in any way. Its attempt to do so was an invalid usurpation

---

4.  KRS 532.050 did not expressly require the PSI to contain a preliminary calculation of presentencing custody credit until it was amended in 2011. The prior authority requiring Probation and Parole to submit a calculation of presentencing custody credit is contained in 501 KAR 6:270 § 1, which incorporates Corrections Policy and Procedures. Policy 28–01–03 provides that a PSI must include applicable jail custody credit.

of the power expressly granted to the trial court by KRS 532.120(3).

Based on the foregoing, we hold that Corrections lacked the authority to correct the alleged error in Appellant's presentencing custody credit. Appellant thus remains entitled to the 3,086 days of presentencing custody credit awarded by the trial court.

The dissent contends that we reached this conclusion by misinterpreting the trial court's written judgment. Specifically, the dissent asserts that the judgment did not incorporate by reference Probation and Parole's calculation; instead, it indefinitely delegated the trial court's statutory duty to calculate presentencing custody credit to Corrections. We respectfully disagree.

The written judgment entered in this case is clearly a form document used by the trial court. It contains several specific provisions which the trial judge is required to change from case to case. However, it also contains a number of boilerplate provisions, which have been written in a broad manner so that they apply in every case. The term related to presentencing custody credit is one of these boilerplate provisions—unless changed to resolve a particular disagreement, it awards every defendant the presentencing custody credit "calculated by the Division of Probation and Parole." Thus, we find that this language was intended to adopt Probation and Parole's calculation as an alternative to requiring the judge to change the specific number of days to which each individual defendant is entitled. Viewing the judgment as a whole, we believe that our interpretation is more plausible than the dissent's, which construes the judgment as effecting a legally questionable delegation of judicial authority to the executive branch for an indefinite time in the future. Here, of course, the time period was six years.

Additionally, the dissent's interpretation of the judgment is not consistent with the actions taken by Corrections and the trial court following Appellant's release and reincarceration. Five days after Appellant was rearrested and returned to prison, Probation and Parole sought court approval of its reduction in Appellant's custody credit by submitting to the trial court a time credit sheet which contained a signature line for the court's chief judge. The chief judge signed this amended time credit sheet and placed it in the record. Had Corrections believed that the written judgment validly granted it the authority to set Appellant's presentencing custody credit, it would not have sought the court's approval. Perhaps more significantly, had the court itself believed that its judgment delegated the duty to calculate presentencing custody credit to Corrections, the chief judge would not have taken the unusual step of signing the amended time credit sheet and placing it in the record. These actions simply would not have been necessary if the dissent's interpretation was correct.

Finally, we note that, at this point in time and in this instance, the trial court also lacks the authority to correct any error in Appellant's presentencing custody credit. A trial court loses jurisdiction to amend its judgment ten days after entry. CR 59.05. There are several rules, including RCr 10.10, RCr 11.42, and CR 60.02, which permit a trial court to reassert jurisdiction and amend its judgment. However, these rules are not applicable under the facts of this case.[5]

---

5. RCr 11.42 clearly does not apply in this case. Pursuant to RCr 11.42, a court may

vacate or amend a judgment which a defendant proves is void due to violation of a

■ RCr 10.10 allows a court to amend its judgment at any time to correct clerical errors. CR 60.02 permits a court to amend its judgment on the basis of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or any reason of an extraordinary nature under. However, neither RCr 10.10 nor CR 60.02 can be used to correct judicial errors. *See Viers v. Commonwealth,* 52 S.W.3d 527, 529 (Ky.2001); *Winstead,* 327 S.W.3d at 488.

■ A judicial error is an error "which is the result of erroneous judgment or misapplied judicial or quasi judicial discretion." *Buchanan v. West Ky. Coal Co.,* 218 Ky. 259, 291 S.W. 32, 35 (Ky.1927). In contrast, a clerical error is an error in the entry or recording of a judgment. 46 Am. Jur.2d Judgments § 139. Rendering a judgment based on incomplete or inaccurate information is a judicial error. *Viers,* 52 S.W.3d at 529. In *Viers,* we held that it was judicial error for the trial court to rely on the inaccurate information contained in the PSI and award the defendant the incorrect amount of custody credit. 52 S.W.3d at 529. Thus, the defendant retained the benefit of the error in *Viers. Id.*

■ In this case, as in *Viers,* the trial court awarded Appellant an allegedly incorrect amount of presentencing custody credit in reliance on the calculation performed by Probation and Parole. The decision to incorporate the calculation into its sentence was an exercise of the court's discretion. Because the alleged error in this case was a direct result of the exercise of judicial discretion, any error is judicial. Therefore, the trial court cannot correct it under RCr 10.10 or CR 60.02.

### III. CONCLUSION

For the reasons set forth above, we hold that the Department of Corrections lacked the authority to modify the amount of presentencing custody credit awarded to Appellant in the trial court's sentence. We therefore reverse the Court of Appeals and remand this matter to the Jefferson Circuit Court for further proceedings consistent with this Opinion.

CUNNINGHAM, NOBLE, SCHRODER, and VENTERS, JJ., concur. MINTON, C.J., dissents by separate opinion. ABRAMSON, J., not sitting.

MINTON, C.J., dissenting.

The majority opinion misstates the question presented in this case as "whether the Department of Corrections can correct an alleged error in the calculation of a presentencing custody credit *after the calculation is incorporated into the court's final judgment.*" (Emphasis added.) I respectfully dissent because a precise calculation of the number of jail-time credit days was never incorporated into the trial court's final judgment.

At Bard's sentencing hearing, the trial judge asked Bard's counsel whether they had reviewed the presentencing investigation report (PSI) and recommended any changes. Defense counsel proceeded to

---

constitutional right, lack of jurisdiction, or violation of a statute. *Thompson v. Commonwealth,* 177 S.W.3d 782, 785 (Ky.2005). RCr 11.42 relief is available only to "[a] prisoner in custody under sentence or a defendant on probation, parole, or conditional discharge." Because the party alleging error in this case is the Commonwealth, not Appellant, RCr 11.42 is inapplicable. However, even if Appellant was the party seeking to amend the sentence, RCr 11.42 relief would not be warranted. RCr 11.42 cannot be used to address issues which could have been raised on direct appeal. *Smith v. Commonwealth,* 412 S.W.2d 256, 259 (Ky.1967). In this case, any dispute regarding the trial court's award of custody credit could have easily been raised on appeal.

list corrections to the PSI without mentioning a Documentation Custody Time Credit Sheet or the amount of presentencing custody credit that Bard would receive. The trial court sentenced Bard to twenty years' imprisonment, saying nothing about whether he was entitled to presentencing custody credit or the amount to which he was entitled. Only the trial court's written judgment mentions Bard's custody credit.

The written judgment states, "The Defendant shall be entitled to credit for time spent in custody prior to sentencing, said time *to be calculated* by the Division of Probation and Parole. KRS 532.120." (Emphasis added.) The majority's holding rests entirely on the fallacious premise that the trial court's language directing Probation and Parole to calculate jail-time credit amounted to incorporation by reference of the custody-credit calculation that may have appeared on a time-credit sheet that may have been submitted to the trial court along with the PSI at the sentencing hearing. By what legerdemain this phantom jail-time credit number became incorporated into the trial court's final judgment, only the majority appears to understand. Yet, the majority carves this phantom number in stone and then holds that Probation and Parole was not authorized thereafter to comply with the trial court's directive by actually performing the calculation ordered by the trial court.

The Commonwealth attempts to argue that at least a factual issue exists concerning whether the sheet containing a jail-time credit calculation was actually available at Bard's sentencing. But even if it was attached to the PSI at sentencing, this jail-time credit calculation never became a finding made by the trial court. At the sentencing hearing, the trial court did not calculate Bard's jail-time credit or refer to an attachment containing the calculation. And nothing indicates the trial court saw or considered the number of days to which Bard was entitled.

These facts differ markedly from *Winstead v. Commonwealth*,[6] a case we published less than a year ago in which the trial court's oral statements at sentencing and written judgment specifically credited the defendant with 234 days of jail-time credit.

"In Kentucky, a court speaks through the language of its orders and judgments."[7] And "[t]he legal operation and effect of a judgment must be determined from a construction and interpretation of its terms."[8] In construing a judgment, its legal effect "must be declared in light of the literal meaning of the language used."[9] Its unambiguous terms, "like the terms in a written contract, are to be given their usual and ordinary meaning."[10] And an interpreting court "may not by construction add new provisions to a judgment."[11] But the intention of the rendering court is the determinative factor in interpreting judgments.[12]

The judgment clearly says that Bard's custody credit was "to be determined" by the Division of Probation and Parole. The

6. 327 S.W.3d 479 (Ky.2010).

7. *Glogower v. Crawford*, 2 S.W.3d 784, 785 (Ky.1999) (citations omitted).

8. *Turner v. Begley*, 239 Ky. 281, 39 S.W.2d 504, 506 (1931).

9. 46 Am.Jur.2d *Judgments* § 74.

10. *Id.*

11. *Id.*

12. *Id.; See also Farmer v. Cassinelli*, 303 S.W.2d 555, 557 (Ky.App.1957) ("A judgment must be construed as a whole, so as to effectuate the intent and purpose of the court.").

literal meaning of this language says that the trial court was not specifically considering or incorporating the calculation made by Probation and Parole for Bard, even if a number were submitted to the trial court at the sentencing hearing. Rather, the judgment explicitly delegates the task of calculating Bard's presentencing custody credit to Probation and Parole, a process that I believe routinely happens in some circuit courts around the Commonwealth. Whether this delegation was a proper delegation was not raised by a timely appeal from the judgment. So, in my view, the majority misses the mark here by framing the issue as it does and basing its holding on an unpublished opinion discussing obligations of the sentencing court.

It is axiomatic that a judgment stands on its own, and any interpretation must begin and end within its four corners. BLACK'S LAW DICTIONARY defines *judgment* as "[a] court's final determination of the rights and obligations of the parties in a case."[13] Here, the only final determination in the judgment concerning Bard's custody credit is that the trial court delegated the task of calculating the number of days to Probation and Parole. To conclude otherwise is contrary to the plain language of the judgment. And incorporating the calculation erroneously adds new provisions to the trial court's judgment.

The majority states, "Because the duty to award presentencing custody credit was vested in the trial court, Corrections was not authorized to modify Appellant's credit in any way."[14] I disagree. The version of KRS 532.120(3) in effect at the time of Bard's sentencing required courts to award applicable jail-time credit to defendants.[15] But it did "not facially require the trial court's award of jail-time credit to be inserted into the final judgment of conviction...."[16] In *Winstead v. Commonwealth,* we noted that "it is generally expected that the final judgment will include information as to how much, if any, pretrial jail-time credit a defendant is due."[17] But we did not conclusively decide the issue. And we cannot address the issue in the case before us today because the parties did not appeal that issue.

The only issue truly before us is whether the judgment incorporated Probation and Parole's specific calculation of Bard's custody credit on the day of the sentencing hearing. If it did, then I agree that it would be judicial error under *Winstead.*[18] But because the judgment did not specifically do so and did not incorporate the calculation into the judgment, there is nothing in the judgment to correct. So the Department of Corrections could administratively calculate the precise number days of Bard's jail-time credit as the judgment directs. And KRS 454.415 requires Bard to pursue any remedies administratively before he can appeal the calculation issue to the circuit court. Therefore, I respectfully dissent and would affirm the trial court and the Court of Appeals.

13.  BLACK'S LAW DICTIONARY (9th ed.2009).

14.  Majority opinion, pg. 5.

15.  *Winstead v. Commonwealth,* 327 S.W.3d 479, 484 (Ky.2010).

16.  *Id.*

17.  *Id.* at 485.

18.  *Id.* at 486.