MODIFIED: FEBRUARY 18, 2016
RENDERED: SEPTEMBER 24, 2015
TO BE PUBLISHED

**Supreme Court of Kentucky**

2014-SC-000235-CL

DATE 2-18-16 *[handwritten signature]*

RONNIE LEE BOWLING                                   MOVANT

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF
KENTUCKY, SOUTHERN DIVISION LONDON
V.                          HONORABLE AMUL R. THAPAR,
UNITED STATES DISTRICT JUDGE
CIVIL NO. 12-A89-ART

RANDY WHITE (WARDEN, KENTUCKY
STATE PENITENTIARY)                                  RESPONDENT

**OPINION OF THE COURT BY JUSTICE NOBLE**

**CERTIFICATION OF LAW**

Ronnie Lee Bowling is currently on Kentucky's death row for a pair of murder convictions obtained in 1992. In 1996, he was also convicted of attempted murder and sentenced to twenty years in prison, with that sentence being served concurrently with the earlier one. The judgment in the latter case failed to award Bowling substantial jail-time credit he was entitled to that would mean he had served out that sentence in 2009. Nonetheless, the Department of Corrections has treated that twenty-year sentence as though it had been served out at that time.

This case arises from a petition for habeas corpus that Bowling filed in United States District Court for the Eastern District of Kentucky challenging his 1996 conviction. Before that court may exercise jurisdiction, however, it

must first determine that Bowling is "in custody" under the challenged conviction. Unable to resolve the question, in part because of a perceived conflict in our case law, the district court certified two questions to this Court. *See Bowling v. White*, CIV. 12-189-ART, 2014 WL 1883732 (E.D. Ky. Apr. 29, 2014).

This Court accepted the certification but agreed only to consider one of the questions:

> Does *Bard v. Commonwealth*, 359 S.W.3d 1 (Ky. 2011), control Bowling's case, so that the Department of Corrections lacked authority to correct the sentencing court's failure to award jail-time credit in Bowling's Rockcastle County Case?[1]

Although *Bard v. Commonwealth* continues to be good law, it does not control Bowling's case, which presents a different factual scenario. Thus, as to the district court's certified question, under the present version of KRS 532.120(3), the Department of Corrections may award an inmate jail-time credit that was mistakenly left off the judgment of conviction and sentence entered at a time when the trial court was statutorily commanded to award appropriate credit. Whether Corrections properly did so, and thus did not have Bowling in custody on that charge at the time he filed his habeas petition, requires fact-finding that must be done by the district court.

## I. Background

The record in this case is sparse because it concerns the certification of a question of law, and we are thus dependent on the facts as articulated by the

---

[1] The second question was: "Factually, has Bowling's Rockcastle County sentence expired?" We did not certify the second question because it required a factual determination that is the task of the trial court, not of a court that is only certifying the law.

district court in its request. Nonetheless, some recounting of this case's background is necessary to understand the issues.

Ronnie Lee Bowling's various cases arise from a crime spree in January and February 1989. During that time, he robbed and killed two men in Laurel County, also committing burglaries in the process. Shortly after the second murder, Bowling entered a gas station in Rockcastle County, where he shot the owner, attempting but failing to kill him. Police immediately chased Bowling, and he was quickly arrested. He was indicted for his crimes in both Laurel and Rockcastle Counties.

The Laurel County case went to trial first, in 1992. Bowling was convicted on all counts and sentenced to death in December 1992. Both his convictions and his sentence were affirmed by this Court in 1997. *See Bowling v. Commonwealth*, 942 S.W.2d 293, 297 (Ky. 1997). According to his Department of Corrections Resident Record Card,[2] Bowling was remanded to the custody of the Department of Corrections on December 9, 1992.

The Rockcastle County charges did not go to trial until 1996, by which time Bowling had been incarcerated for almost seven years. He was convicted of attempted murder and sentenced to twenty years' imprisonment. Though the court stated orally that this sentence would be served consecutively to any other sentence, the written judgment was silent on that point, and thus the sentence automatically ran concurrently with the 1992 sentence. *See* KRS 532.110(2); KRS 197.035(2). This Court affirmed this conviction and sentence

---

[2] A copy of this document, dated June 15, 2011, is attached to Bowling's brief. The copy appears to have been filed with the district court on October 19, 2012.

in *Bowling v. Commonwealth,* 96–SC–442–MR (October 15, 1998) (unpublished), and the Court of Appeals later affirmed the denial of Bowling's Criminal Rule 11.42 motion challenging his conviction, *Bowling v. Commonwealth,* 2003-CA-002339-MR, 2005 WL 3116032 (Ky. App. Nov. 23, 2005).

At the time of the Rockcastle County conviction, the circuit court was required to give Bowling any so-called jail-time credit to which he was entitled. *See* KRS 532.120(3) (1992) ("Time spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence shall be credited by the court imposing sentence toward service of the maximum term of imprisonment."). Thus, the judgment in that case should have given Bowling credit for the time he had served between his arrest and initial conviction. The circuit court nevertheless awarded Bowling "0 days" of jail-time credit. That judgment was not amended, and that aspect of the decision was not appealed. Nonetheless, the Department of Corrections claims his sentence has been running since his arrest in 1989.

On September 12, 2012, Bowling filed a petition for habeas corpus in the United States District Court for the Eastern District of Kentucky challenging his conviction in the Rockcastle County case. For a federal district court to have jurisdiction over a habeas petition in a given case made by a person convicted in state court, however, the person must be "in custody pursuant to the judgment of a State court." 28 U.S.C.A. § 2254.

That jurisdiction exists as long as the petition was filed while the petitioner was in custody under the challenged judgment, even if his sentence

4

expires before it can be decided. *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) ("We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed."). The petitioner's in-custody status must be related, in some way, to the conviction he challenges in the habeas petition. *See Sinclair v. Blackburn*, 599 F.2d 673, 676 (5th Cir. 1979) ("[J]urisdiction exists if there is a positive, demonstrable relationship between the prior conviction and the petitioner's present incarceration.").

The fact that Bowling continues to be incarcerated under the *Laurel County* sentence does not affect the district court's jurisdiction: so long as he was still serving his Rockcastle County sentence when he filed the petition, the district court has jurisdiction to consider it. *See Sciberras v. United States*, 404 F.2d 247, 249 (10th Cir. 1968) (allowing habeas attack on "only one of two or more concurrent ... sentences even though he would not be entitled to immediate release if successful"); *see also Benton v. Maryland*, 395 U.S. 784, 791 (1969) (finding no jurisdictional bar under concurrent-sentence doctrine, i.e., where there is another valid conviction that would leave defendant incarcerated).

On the other hand, if Bowling had completely served his sentence for the Rockcastle County conviction, as the Department of Corrections claims, then his present incarceration has no relationship with that conviction, because he is in custody only for the murder convictions, and the district court has no jurisdiction to consider his petition. *See Mays v. Dinwiddie*, 580 F.3d 1136, 1141 (10th Cir. 2009) (finding petitioner not to be in custody from expired

5

sentence that ran concurrently with another longer sentence); *cf. Maleng*, 490 U.S. at 492 (holding petitioner not in custody on expired state conviction when later serving under federal conviction).

For that reason, the district court undertook to determine whether Bowling was still in custody for the Rockcastle County conviction. The court noted that the available authority appeared to conflict, comparing cases in which this Court has stated that the "Executive Branch, in the form of the Department of Corrections—not the judicial branch—is ultimately responsible for determining when prisoners in its custody are eligible for release," *Winstead v. Commonwealth*, 327 S.W.3d 479, 483 (Ky. 2010), with those in which this Court has stated, under the statute then in effect, that "the responsibility to credit a defendant for presentencing jail time belonged exclusively to the trial court," *Bard v. Commonwealth*, 359 S.W.3d 1, 5 (Ky. 2012). If *Bard* controls, Corrections' attempt to modify the award "was an invalid usurpation of the power expressly granted to the trial court by KRS 532.120(3)." *Id.* at 5–6. The district court also noted that the jail-time credit statute, KRS 532.120(3), was amended in 2011 to assign to Corrections the task of giving custody credit to inmates in most felony cases. Though the district court noted that *Bard* might be distinguishable for various reasons, it nevertheless concluded that it was "unclear" whether Corrections could correct Bowling's sentence and thereby render him no longer in custody under the Rockcastle County conviction.

Rather than attempt to resolve the seeming conflict in our cases, the district court instead certified a pair of questions to this Court, as allowed by

6

Civil Rule 76.37(1).[3] We accepted the certification, although we reformulated the questions slightly, as laid out above, and agreed only to answer the question as to what law applies.

## II. Analysis

This case presents an odd twist in that Bowling does not want the jail-time credit to which he is entitled because he wishes to challenge the Rockcastle County conviction. He can only do so at this point by way of his petition for habeas corpus, which, as noted above, requires that he be in custody under that conviction. Bowling's unusual stance and the Department of Corrections' apparent award of custody credit present the reverse of the question in *Bard*, which dealt with the award of too much rather than too little custody credit. Bowling has not been given too much credit on his Rockcastle County sentence. The trial court sentencing order did not in fact give him *any*, though he clearly was entitled to jail-time credit toward his sentence. The essential question before us is whether Corrections may correct this error.

As noted by the district court, our cases appear to be of two minds, suggesting at times the supremacy of the executive branch in deciding questions related to the service of a prison sentence, and at other times the

---

[3] That rule states:

> If there are involved in any proceeding before ... any District Court of the United States ... questions of law of this state which may be determinative of the cause then pending before the originating court and as to which it appears to the party or the originating court that there is no controlling precedent in the decisions of the Supreme Court and the Court of Appeals of this state, the Kentucky Supreme Court may answer those questions of law when certified to it by the originating court, or after judgment in the District Court upon petition of any party to the proceeding.

7

supremacy of the judicial branch in rendering the sentence and adjudicating jail-time credit under KRS 532.120(3). But in some ways, the conflict suggested by the district court is superficial.

Cases like *Winstead* suggesting the supremacy of the executive branch in determining when a prisoner is eligible for release do not appear to concern the actual adjudication of a prisoner's sentence on the front end. In making such broad statements, those cases appear to be addressing things like awarding good-time credit or determining when a defendant is eligible for conditional release, all of which occur on the back end, i.e., after sentence is pronounced and its service begun. *See Winstead*, 327 S.W.3d at 483 n.6 (citing KRS 197.045, which authorizes Corrections to award service credits for good conduct, etc., and KRS 196.070(1)(d), which requires Corrections to "[d]etermine minimum, maximum, and conditional release dates of prisoners in accordance with KRS 197.045").

But as even *Winstead* pointed out, the responsibility for awarding jail-time credit was at that time statutorily lodged with the sentencing court. Indeed, under the statutes then in effect, "the judicial branch [wa]s statutorily required to award applicable jail-time credit to defendants." *Id.* at 483-84.[4] Thus, even under *Winstead*, the power to award jail-time credit fell to the courts, not the executive branch.

---

[4] *Winstead* went on to answer the question of what may be done when the court errs by awarding too much or too little custody credit, holding that such errors must be addressed on direct appeal, and could not be raised by a motion under CR 60.02. *Winstead*, 327 S.W.3d at 488-89. That is why the custody-credit deficiency cannot be corrected by a court at this point.

Rather than creating a clear conflict, this understanding dovetails with *Bard*, in which the defendant was mistakenly awarded too much jail-time credit. Corrections attempted to correct the problem several years down the line. As to whether this was proper, the decision was fairly clear: "No statutory authority or caselaw granted Corrections the power to set or modify presentencing custody credit." *Bard*, 359 S.W.3d at 5. Thus, "Corrections lacked the authority to correct the alleged error in ... presentencing custody credit." *Id.* at 6.

These two cases outline two separate spheres of authority under the previous version of KRS 532.120(3). The judiciary had the exclusive power over the front end of the sentence, that is, the power to render the sentence and to award custody credit against it. (The executive branch was bound by those determinations in carrying out the sentence, as they were incorporated into a binding judgment.) But the executive branch had exclusive power over the back end of a sentence, that is, the power to award good-time credit, to parole, to conditionally discharge a convicted person, or to otherwise determine when the sentence had been served out or the person was otherwise entitled to release.

By calculating Bowling's sentence as having run from 1989, under the old statute, Corrections would be improperly exercising power over the front end of the sentencing process and, in doing so, would be exceeding its statutory authority and invading the exclusive province of the courts by awarding Bowling jail-time credit for time spent incarcerated before his 1992 conviction. Under this reading, Bowling was not awarded custody credit by the trial court, Corrections could not do so, and, as a result, Bowling was still

9

serving his twenty-year sentence for that conviction when he filed his habeas motion.

But, as the district court points out, the statute on this subject, KRS 532.120(3), has changed. In 2011, the statute was amended, *see* 2011 Kentucky Laws Ch. 2, § 98 (HB 463), so that Corrections now has the responsibility for giving jail-time credit in most felony cases,[5] *see* KRS 532.120(3) ("Time spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence shall be credited by the Department of Corrections toward service of the maximum term of imprisonment in cases involving a felony sentence and by the sentencing court in all other cases."). *Bard* was aware of this change but noted that the new "provision was not in effect at the time [the a]ppellant was sentenced or reincarcerated." *Bard*, 359 S.W.3d at 4 n.3. For that reason, the Court applied "the prior version of KRS 532.120(3) and the caselaw interpreting it." *Id.*

That made sense in *Bard* because Corrections was trying to *reduce* the amount of custody credit that had been awarded by the trial court. When that award was made, the prior version of the statute was in effect, and the trial court properly, albeit with a mistaken custody calculation, awarded custody credit to the defendant in that case. That mistaken custody calculation was incorporated into the trial court's judgment, which was not thereafter changed

---

[5] We say "most" because there is an exception for when "a presentence report indicates that a defendant has accumulated sufficient sentencing credits under this section to allow for an immediate discharge from confinement upon pronouncement of sentence." KRS 532.120(8). In such a case, "the court may confirm the amount of the credit and award the credit at pronouncement [of sentence]." *Id.* This provision was also added to the statute in 2011. *See* 2011 Kentucky Laws Ch. 2, § 98 (HB 463).

10

or challenged. Thus, "Corrections lacked the authority to correct the alleged error in [the defendant's] presentencing custody credit," and "he thus remain[ed] entitled to the 3,086 days of presentencing custody credit awarded by the trial court." *Id.* at 6.

This Court agrees that where a trial court has awarded jail-time credit under the prior version of the statute, Corrections cannot unilaterally reduce that award, even though it is now vested with the power to award such credit. Instead, a mistaken award of too much credit must be corrected the same way any erroneous judgment is to be corrected, e.g., through an appeal or, if appropriate, a collateral attack.

Nevertheless, under the new version of KRS 532.120(3), Corrections has the power (indeed, the responsibility) to credit "[t]ime spent in custody" toward an inmate's sentence. That power is not limited to convictions obtained after the statute was amended. And included in this power is a limited authority to correct mistakes in failing to award jail-time credit or in awarding too little jail-time credit. (Indeed, this is likely why the statute was amended, since the judicial remedies are so limited.)

The simple fact is that Bowling was entitled, as a matter of law, to the custody credit that he now wishes to decline. Though defendants can take advantage of mistakes in their favor, as did the defendant in *Bard*, they cannot decline correction of a mistake simply because the correction would not be in their favor. Consider that if Bowling has served out his sentence, and was not also incarcerated under a death sentence, he would be entitled to be released from prison, which is generally viewed as a positive result. In fact, Corrections

11

admitted as much in pleadings to the district court. If Corrections refused to release him, he could challenge that failure, likely (and ironically) in a habeas proceeding. He could not decline the award, thereby staying in prison, even if he wanted to do so.[6]

Thus, the answer to the district court's certified question is that *Bard* does not control Bowling's case to bar the Department of Corrections from awarding him jail-time credit to which he was legally entitled. Again, this is not to say that *Bard* does not continue to control under the circumstances presented by that case, namely, where a trial court mistakenly awarded too much credit when acting under the prior version of KRS 532.120(3). It means only that *Bard* does not control where a trial court, acting under the prior version of KRS 532.120(3), failed to grant the defendant all the credit to which he was legally entitled.[7] In those circumstances, Corrections may act (and

---

[6] Though at first it seems absurd to think that a prisoner would want to stay in prison, it is not difficult to imagine reasons why a long-serving inmate would want exactly that. Long-serving prisoners may become "institutionalized," in the sense of becoming comfortable only in an institutional setting, and they often have limited opportunities and face substantial challenges upon release that can be so overwhelming as to make continued incarceration a preferred outcome. Though the most prominent examples may be fictional, *see The Shawshank Redemption* (Castle Rock Entertainment 1994) (portraying two characters, Brooks and Red, who contemplate breaking parole to be sent back to prison "where things make sense" and they "won't have to be afraid all the time"), there have been real-life instances, *see* Jazmine Ulloa, *Convict couldn't handle being free*, San Antonio Express News (Sept. 25, 2011), http://www.mysanantonio.com/news/local_news/article/Convictcouldn-thandlebeing-free-2187648.php (detailing story of Randall Lee Church, who committed new crime "because he wanted to go back to his job at his former prison unit" in part because he was overwhelmed by the social change that had occurred during his 26 years of incarceration).

[7] We do not address a situation where a trial court, acting under the new statute, awards jail-time credit, even though it no longer has the statutory authority to do so.

12

indeed, *must* act, because the statute states "shall") under the new version of KRS 532.120(3) to give the inmate all jail-time credit to which he is entitled.

### III. Conclusion

In *Bard v. Commonwealth*, this Court concluded that the Department of Corrections could not modify a trial court's mistaken award of too much jail-time credit by reducing it where the award was made under a prior version of KRS 532.120(3) giving the power to make such an award solely to the sentencing court. Although that case is still valid, it does not control the factual scenario presented by the district court's questions, namely, where a trial court failed to award credit due to the defendant and Corrections attempts to award the credit due. We conclude that under the present version of KRS 532.120(3), the Department of Corrections may award an inmate jail-time credit that was mistakenly left off the judgment of conviction and sentence.

The certified question of law is so answered.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, JJ., and Special Justices John D. Seay and William G. Francis, sitting. Barber and Venters, JJ., not sitting. Minton, C.J.; Abramson, Cunningham, and Keller, JJ., and Special Justice William G. Francis concur. Special Justice John D. Seay dissents by separate opinion.

SPECIAL JUSTICE JOHN D. SEAY DISSENTING: Respectfully, I dissent, because I believe this court improvidently accepted certification. The Rockcastle trial court correctly awarded Bowling zero days custody time credit. Corrections did not recalculate Bowling's Rockcastle custody time credit. Because Bowling is serving an aggregate Laurel and Rockcastle sentence of

13

death, he remains in custody on the aggregate sentence and should be permitted to proceed with his habeas action.

In 1992, a Laurel jury convicted Bowling of two (2) counts of murder and four (4) other felony counts. The court sentenced him to death on both murder counts and to consecutive 20 year sentences on each of the felonies.

In 1996, A Rockcastle jury convicted Bowling of one count of attempted murder and the court sentenced him to serve 20 years. Pursuant to KRS 532.110 (2), Bowling is serving the Rockcastle sentence concurrently with the Laurel sentence.

When the Rockcastle trial court imposed its sentence, KRS 532.120 (1) provided as follows:

> (1) An indeterminate sentence of imprisonment commences when the prisoner is received in an institution under the jurisdiction of the Department of Corrections.  When a person is under more than one (1) indeterminate sentence, the sentences shall be calculated as follows:
> (a) If the sentences run concurrently, the maximum terms merge in and are satisfied by discharge of the term which has the longest unexpired time to run . . . .

After the Rockcastle court entered its judgment, Bowling was in Corrections' custody on multiple indictments. Pursuant to KRS 532.120 (1), the Laurel and Rockcastle sentences merged into one "aggregate" sentence of death. As Robert F. Belen (Offender Information Administrator, Department of Corrections) stated in his letter to Bowling dated July 7, 2014 (Tab 6 of movant's brief):

> "When an individual is placed in the custody of the KY DOC on multiple indictments, regardless of crime, felony class or sentence length, that individual is serving on an aggregate sentence. The KY DOC does not segregate the indictments to make individual

14

sentence calculations, nor is the KY DOC required to make hypothetical sentence calculations if a sentence was reverse/remanded or vacated. You are serving an aggregate sentence of death to which your Rockcastle 89CR0027 is running concurrent and will be satisfied upon the completion of your death sentence."

The Department of Corrections Resident Record Card dated June 15, 2011 (Tab 7 of movant's brief) is consistent with KRS 532.120 (1) and Belen's statement. In the block at the top of the page it states, "You have been committed to the DOC to serve the following sentences." In the second block in the middle of the page the table shows "Jail Credit" 1378 applied to "AA-001," Burglary, 1st Degree, 89 CR 024, Laurel, convicted date, 12/09/1992. Zero jail credit is applied to the remaining convictions, including the Rockcastle conviction. At the bottom of the table it shows "Total Sentence Length: Death."

This is also consistent with Kentucky Corrections, Policies and Procedures, Policy Number 28-01-08, "Calculation of Custody Time Credit," which states in pertinent part in Section II., A., 2., "Where multiple felony indictments are involved any applicable credit shall be applied to the indictment which is sentenced first."[8]

The Rockcastle court's final judgment reflects that court ordered a Presentence Investigation Report (PSI) and gave it due consideration. This court does not have Bowling's Rockcastle PSI, but if Probation and Parole calculated his custody time credit according to applicable statutes and policy, the PSI should have shown Bowling was entitled to zero days custody time credit. This is because Corrections would have already applied the entire

_____

[8] Policy Number 28-01-08 became effective November 2, 2012, but the section cited above represents no change from previous policy.

15

custody time credit to the Laurel conviction, which was the "indictment which is sentenced first."

While the U.S. District Court found the Rockcastle court mistakenly awarded Bowling zero days custody time credit, there appears to be no basis in the record upon which the court could base that finding. It appears more likely the Rockcastle trial court's award of zero days was correct, based upon Corrections' likely initial calculation and applicable statutes and policies.

The U.S. District Court also found Corrections "recalculated" Bowling's custody time credit. There also appears to be no basis in the record upon which the court could base that finding. *Bard v. Commonwealth*, 327 S.W. 3d 479 (Ky. 2010), has no relevance unless Corrections recalculated the custody time credit.

COUNSEL FOR MOVANT:

Dennis James Burke
Assistant Public Advocate
Department of Public Advocacy
207 Parker Drive, Suite 1
LaGrange, Kentucky 40031


COUNSEL FOR RESPONDENT:

William Robert Long, Jr.
Assistant Attorney General
Office of Criminal appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601

# Supreme Court of Kentucky

2014-SC-000235-CL

RONNIE LEE BOWLING                                              MOVANT

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF
KENTUCKY, SOUTHERN DIVISION LONDON
V.                      HONORABLE AMUL R. THAPAR,
UNITED STATES DISTRICT JUDGE
CIVIL NO. 12-A89-ART

RANDY WHITE (WARDEN, KENTUCKY
STATE PENITENTIARY)                                RESPONDENT

## ORDER DENYING PETITION FOR REHEARING AND MODIFYING OF OPINION

The petition for rehearing filed by the movant of the Opinion of the Court by Justice Noble, rendered on September 24, 2015, is denied and the Opinion of the Court is modified by the substitution of the entire opinion as attached hereto. The original opinion is modified by the deletion and addition of language on pages 4, 8, 14 and 15. Said modifications do not affect the holding of the original Opinion of the Court.

Minton, C.J.; Cunningham, Hughes, Keller, and Noble, JJ., and Special Justices John D. Seay and William G. Francis, sitting. All concur except Special Justice John D. Seay who dissents. Venters and Wright, JJ., not sitting.

Entered: February 18, 2016.

_____
CHIEF JUSTICE