NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0320n.06

No. 15-6318

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

RONNIE BOWLING,                          )
                                         )
    Petitioner-Appellant,             )
                                         )
      v.                            )    ON APPEAL FROM THE
                                         )    UNITED STATES DISTRICT
RANDY WHITE, WARDEN,                     )    COURT FOR THE EASTERN
                                         )    DISTRICT OF KENTUCKY
    Respondent-Appellee.              )
                                         )
                                         )
                                         )

BEFORE: CLAY, GIBBONS, and STRANCH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** In 1989, Ronnie Lee Bowling was taken

into custody on charges of murder, attempted murder, burglary, and robbery. In 1992, he was

convicted of the murder, burglary, and robbery charges in Laurel County, Kentucky, and was

sentenced to death plus eighty years' imprisonment. Four years later, he was convicted of the

attempted murder charge in Rockcastle County, Kentucky, and was sentenced to twenty years'

imprisonment, to run concurrently with his Laurel County sentences. In September 2012, after

exhausting available state-court relief, Bowling filed a petition for a writ of *habeas corpus* in

federal court under 28 U.S.C. § 2254(a), alleging numerous constitutional violations in the

Rockcastle County proceedings. Finding that Bowling's twenty-year Rockcastle County

sentence began in 1989, the district court held that it lacked jurisdiction to consider Bowling's

petition because he was no longer "in custody" on this sentence when he filed his petition in

September 2012. We issued a certificate of appealability on the following question: whether Bowling was "in custody" under § 2254(a) at the time he filed his *habeas* petition in 2012, including whether the second exception under *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 405–06 (2001), applies to this case. For the reasons stated here, we affirm.

I.

On January 20, 1989, Ronald Smith was shot and killed while working alone at a gas station in Laurel County, Kentucky. Approximately one month later, on February 22, Marvin Hensley was shot and killed while working alone at a different Laurel County gas station. No suspects emerged until a similar crime occurred three days later at a gas station in nearby Rockcastle County, Kentucky. On February 25, 1989, Ronnie Lee Bowling entered a Rockcastle County gas station owned by Ricky Smith and began asking Smith about possible employment. After a short conversation, Bowling opened fire on Smith, who returned fire in self-defense, striking Bowling twice. After Bowling fled the gas station in his vehicle, Smith notified the police. Following a short pursuit, Bowling was arrested and taken into custody. Bowling was indicted for the Laurel County murders on March 17, 1989, and was indicted for the attempted murder of Smith in Rockcastle County on April 28, 1989. Bowling did not post bond in either case.

In late 1992, Bowling was tried and convicted on the Laurel County indictment for two counts of capital murder, two counts of first-degree burglary, and two counts of first-degree robbery. He was sentenced to death plus four consecutive twenty-year sentences (the "Laurel County sentences"). He was awarded 1,378 days of pre-trial custody credit, relating back to his February 25, 1989 arrest. Bowling's Laurel County conviction and sentences were upheld on direct appeal, and his attempts at state post-conviction relief were unsuccessful. He filed a

petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in the Eastern District of Kentucky on January 15, 2003, which was denied. His appeal of that decision is currently pending before a separate panel of this court.

Bowling was tried on the Rockcastle County indictment on February 27–28, 1996. He was convicted of attempted murder and sentenced to twenty years' imprisonment (the "Rockcastle sentence" or the "Rockcastle conviction"). Although Bowling alleges that the sentencing judge orally ordered the sentence to run consecutive to the earlier Laurel County sentences, the written sentencing order did not specify whether the sentence was to run concurrently or consecutively. Pursuant to Kentucky law, the Rockcastle sentence was therefore required to run concurrently with the Laurel County sentences. *See* Ky. Rev. Stat. (KRS) § 532.110(2). The sentencing judge did indicate in his written order, however, that Bowling was not entitled to any pre-trial custody credit towards his Rockcastle sentence.

Bowling unsuccessfully pursued relief on his Rockcastle conviction and sentence in state court. On September 6, 2012, Bowling filed a § 2254 *habeas* petition in the Eastern District of Kentucky, asserting numerous claims for relief. The matter was referred to a magistrate judge, who concluded that the sentencing judge had erred in denying Bowling pre-trial custody credit under Kentucky law. The magistrate found that Bowling was "entitled to credit dating back to February 25, 1989," on his Rockcastle sentence and had, in fact, been awarded such credit by the Kentucky Department of Corrections (KDOC). DE 67, Page ID 1318–29. The magistrate thus recommended that the petition be dismissed on jurisdictional grounds—namely, that Bowling was not "in custody" under § 2254 because his twenty-year Rockcastle sentence had fully expired by the time he filed his petition in 2012.

In assessing the magistrate's report and recommendation, the district court agreed that the sentencing court had erred in denying Bowling pre-trial custody credit on his Rockcastle sentence, but questioned whether KDOC had the legal authority to correct such errors by awarding Bowling the missing credit. Accordingly, the district court certified two questions to the Kentucky Supreme Court: (1) whether, legally, KDOC had authority to correct the sentencing court's failure to award jail-time credit; and (2) whether, factually, Bowling's Rockcastle sentence had expired by the time he filed his *habeas* petition in 2012.

The Kentucky Supreme Court accepted certification of the first question but expressly declined to consider the second question. Agreeing in dicta that Bowling was entitled, "as a matter of law," to 1,378 days of pre-trial custody credit on his Rockcastle sentence, the Kentucky Supreme Court held that KDOC not only had the authority to award an inmate pre-trial custody credit to which he was entitled, but was statutorily required to do so under KRS § 532.120(3) regardless of whether the sentencing court declined to award such credit. *Bowling v. White*, 480 S.W.3d 911, 917–18 (Ky. 2015).

With that answer in hand, the district court dismissed Bowling's *habeas* petition for lack of jurisdiction. Finding that KDOC had awarded Bowling the pre-trial custody credit to which he was entitled, the district court concluded that Bowling's Rockcastle sentence began in 1989 and expired in 2009. Accordingly, the district court held that Bowling was no longer "in custody" on the Rockcastle conviction when his petition was filed in September 2012. This appeal followed.

II.

Whether Bowling was "in custody" at the time he filed his § 2254 *habeas* petition is a jurisdictional question we review *de novo*. *See Steverson v. Summers*, 258 F.3d 520, 522 (6th Cir. 2001).

III.

The district court had jurisdiction to entertain Bowling's § 2254 *habeas* petition only if he was "in custody" on his Rockcastle conviction at the time he filed his petition in September 2012. *See* 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989). Whether Bowling was "in custody" on his Rockcastle conviction requires us to answer two questions. First, when did Bowling's Rockcastle sentence begin? Second, if Bowling's Rockcastle sentence began in 1989, what is the effect, for *habeas* purposes, of KRS § 532.120(1), which provides that the maximum terms of concurrent sentences in Kentucky "merge in" and are satisfied only by discharge of the longest term? For the reasons articulated here, we find that Bowling's Rockcastle sentence began in 1989 and that § 532.120(1) has no effect on whether Bowling was "in custody" within the meaning of § 2254. Accordingly, because Bowling was no longer "in custody" on his Rockcastle conviction when he filed his petition in September 2012, we affirm the district court's dismissal for lack of jurisdiction.

A.

Under Kentucky law, Bowling was entitled to pre-trial custody credit on his Rockcastle sentence dating back to February 25, 1989, and was, in fact, awarded such credit by KDOC. At the time Bowling was sentenced on his Rockcastle conviction, KRS § 532.120(3) provided:

> Time spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence shall be credited by the court imposing sentence toward service of the maximum term of imprisonment. If the sentence is to an indeterminate term of imprisonment, the time spent in custody prior to the

5

> commencement of the sentence shall be considered for all purposes as time served in prison.

(West 1997).[1] Despite this seemingly clear mandate, the sentencing court awarded Bowling "0 days" of pre-trial custody credit on his Rockcastle sentence. DE 13-8, Page ID 198. The district court, finding that the sentencing court had erred, nonetheless concluded that KDOC had corrected the sentencing court's mistake and had awarded Bowling 1,378 days of pre-trial custody credit dating back to 1989. Bowling disagrees with both findings, arguing that the sentencing court properly denied him any pre-trial custody credit on his Rockcastle sentence and further that KDOC did not "fix" any supposed error by the sentencing court. To support his first point, Bowling cites various KDOC policies concerning the calculation of custody time credit. On his second point, Bowling relies on documentary evidence, which allegedly demonstrates that KDOC did not award him any pre-trial custody credit on his Rockcastle sentence. Each argument falls short.

Bowling's reliance on KDOC policies to support his argument that he was entitled to pre-trial custody credit on only his Laurel County sentences ignores the contrary, and controlling, requirements imposed by Kentucky statute. True, KDOC Policy 28-01-08(II)(A)(2) provides: "Where multiple felony indictments are involved, any applicable credit shall be applied to the indictment which is sentenced first." And § 28-01-08(II)(A)(6) further states: "If an offender is being sentenced on more than one felony indictment at the same time, custody time credit shall be calculated separately for each indictment . . . . If those felony detainments overlap, one indictment shall receive credit while the other indictment shall have fewer or zero (0) days credit." But these policies directly conflict with § 532.120(3), which, at the time Bowling was convicted, explicitly required that "[t]ime spent in custody prior to the commencement of a

---

[1] KRS § 532.120(3) was amended in 2011, replacing "by the court imposing the sentence" with "by the Department of Corrections."

sentence as a result of the charge that culminated in the sentence *shall* be credited by the court imposing sentence." KRS § 532.120(3) (West 1997) (emphasis added). Thus, the Rockcastle sentencing court (and later KDOC under the amended statute) had no discretion to deny Bowling pre-trial custody credit for the time he spent in custody as a result of the Rockcastle attempted-murder charge. *See Bartrug v. Commonwealth*, 582 S.W.2d 61, 63 (Ky. Ct. App. 1979) ("Based upon the mandatory language of [§ 532.120(3)], the word 'shall' precludes any discretion on the part of the trial court in crediting time for preconviction custody.").

This interpretation of § 532.120(3) is consistent with the Kentucky Supreme Court's understanding of the statute. In answering the district court's certified question, the Kentucky Supreme Court noted, albeit in dicta, that "Bowling was entitled, as a matter of law, to the custody credit that he now wishes to decline." *Bowling*, 480 S.W.3d at 917. Although we are not bound by this statement, it is certainly persuasive. Moreover, even KDOC's policies contemplate this result under § 532.120(3) as it relates to concurrent sentences. *See* CPP 28-01-08(II)(A)(8) ("Since a misdemeanor and felony sentence run concurrently by statute, *overlapping credit* may be calculated." (emphasis added)). Accordingly, because Bowling was first taken into custody pursuant to the Rockcastle charge on February 25, 1989, he was entitled to 1,378 days of pre-trial custody credit on his Rockcastle sentence under § 532.120(3). To the extent KDOC's policies deny Bowling such credit, they are inconsistent with Kentucky statutory law and are thus void. *See* KRS § 13A.120(2)(i); *Franklin v. Nat. Res. & Envtl. Prot. Cabinet*, 799 S.W.2d 1, 3 (Ky. 1990).

That does not necessarily end the inquiry, however. Unlike the district court, we do not believe it is clear, at least from the record, that KDOC corrected the sentencing court's mistake. Some evidence suggests KDOC awarded Bowling pre-trial custody credit on his Rockcastle

sentence. In a March 2012 letter, for example, a KDOC official informed Bowling that his Rockcastle sentence had been "served out" as of that date, which predated his September 2012 filing. DE 1-1, Page ID 99. But other evidence is less clear. Bowling's Resident Record Card, for instance, attributes 1,378 days of jail credit to only his Laurel County burglary conviction and not explicitly to his Rockcastle conviction. Yet, it also lists his total time served as "22y 3m 13d" without differentiating between his Laurel County and Rockcastle sentences, suggesting that Bowling began serving both in 1989.[2] DE 13-10, Page ID 205.

On balance, however, we conclude that KDOC awarded Bowling pre-trial custody credit on his Rockcastle sentence. Although the record evidence is ambiguous as to this fact, the Warden's repeated concession, throughout this litigation, that Bowling was no longer "in custody" on his Rockcastle sentence at the time he filed his § 2254 petition is enough to satisfy us that such credit was awarded. This court, of course, must independently determine its own jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). But the Warden is the Kentucky state officer that would have custody of Bowling if he was still serving his Rockcastle sentence, and the Warden's assertion that he did not have such custody in September 2012 carries great weight. This is especially true where his assertion is consistent with what § 532.120(3) requires: an award of pre-trial custody credit for time spent in custody on a charge that culminates in a sentence. Accordingly, we find that Bowling was credited with 1,378 days

---

[2] Bowling's strongest piece of evidence is an April 19, 2016 letter from a KDOC official indicating that, pursuant to KDOC policies, Bowling was awarded pre-trial custody credit on only his Laurel County sentences because it was the indictment sentenced first. But this letter was not in the record before the district court, and we decline to supplement the record to include it. In any event, this letter, at best, furthers the ambiguity in the record and is not dispositive of the outcome here.

of pre-trial custody credit on his Rockcastle sentence, resulting in that sentence having expired in 2009 and rendering him no longer "in custody" at the time he filed his September 2012 petition.[3]

B.

We also find that KRS § 532.120(1) has no effect on the § 2254 "in custody" determination. This provision provides that, "[w]hen a person is under more than one (1) indeterminate sentence, the sentences shall be calculated as follows: If the sentences run concurrently, the maximum terms merge in and are satisfied by discharge of the term which has the longest unexpired time to run."[4] KRS § 532.120(1)(a). Bowling argues that regardless of when his Rockcastle sentence began, his Rockcastle and Laurel County sentences have "merged" under KRS § 532.120(1), such that he is "in custody" on his Rockcastle sentence so long as he is serving his Laurel County death sentence. The Commonwealth disagrees, contending that § 532.120(1) has no bearing on whether Bowling is "in custody" under § 2254.

To support his interpretation of § 532.120(1), Bowling cites to *Commonwealth v. Propes*, No. 2010-CA-002315-MR, 2011 WL 5600619 (Ky. Ct. App. Nov. 18, 2011). In *Propes*, the defendant was convicted of murder and sentenced to life imprisonment in 1974, but was paroled after eight years. *Id.* at *1. A year after being released on parole, the defendant was convicted of a separate rape and was sentenced to two concurrent ten-year terms, both of which were to be served concurrent with his life sentence. *Id.* After being paroled again in 1994, the defendant

---

[3] It is important that we note the strange posture of this case. Bowling asks us not to free him from allegedly unlawful custody, but rather to extend such custody so that he may pursue further relief. In the usual case, Bowling has already won—the Commonwealth concedes that Bowling is not in custody under his Rockcastle sentence and has not been since 2009. Thus, should he succeed in having his Laurel County convictions overturned, Bowling would be a free man. Despite this, he seeks to reach a counterintuitive result that would require that we ignore not only the Commonwealth's own concessions, but also what Kentucky law requires. And Bowling asks us to contort our *habeas* jurisprudence in a case where even the equities are not in his favor. There is no evidence that the Warden misinformed Bowling to his detriment or otherwise acted to prejudice Bowling's ability to seek federal review of his state court proceedings.

[4] In Kentucky, all felony sentences are deemed "indeterminate," KRS § 532.060(1), while misdemeanor convictions result in a "definite term" of imprisonment, *id.* § 532.090.

9

violated his parole and returned to prison in 2004. *Id.* As a result, the Commonwealth required him to register as a sex offender under new registry requirements promulgated in 1998, which applied to individuals "incarcerated" on sex crimes as of that date. *Id.* The defendant objected, claiming that he had fully served his rape sentence prior to 1998 and was therefore incarcerated on only the murder charge. *Id.* Applying § 532.120(1), the Kentucky Court of Appeals found that the defendant's ten-year rape sentence had "merged" into his life sentence, rendering him incarcerated on the rape charge when he violated his parole in 2004, despite the ten-year sentence having run well before that date. *Id.* at \*2; *see also Stewart v. Ky. Parole Bd*, No. 2001-CA-002264-MR, 2003 WL 1860278, at \*3 (Ky. Ct. App. April 11, 2003). But *Propes* was not issued by the Kentucky Supreme Court, nor was it a published decision. And, importantly, it did not involve a § 2254 "in custody" determination. Thus, it is neither controlling nor persuasive here.

The case on which the Commonwealth primarily relies, *Mays v. Dinwiddie*, 580 F.3d 1136 (10th Cir. 2009), also fails to resolve the issue. In *Mays*, an Oklahoma prisoner filed a § 2254 petition challenging a fully discharged burglary sentence, reasoning that he was still in custody for a separate crime whose sentence ran concurrent to the burglary sentence. *Id.* at 1138–40. The Tenth Circuit dismissed the petition, holding that a prisoner who was still serving the longer of two concurrent sentences, but that had completed the term of the shorter sentence, was no longer "in custody" under § 2254 for purposes of challenging the conviction underlying the shorter sentence. *Id.* at 1140–41. Although the facts of *Mays* are closely analogous to those here, it is distinguishable because Oklahoma lacked a merger statute similar to that of § 532.120(1).

10

The record evidence is similarly unhelpful. To be sure, some of the documentary evidence indicates that Bowling's Laurel County and Rockcastle sentences have merged, such that he is serving an "aggregate sentence of death." DE 114-1, Page ID 1688; DE 1-1, Page ID 97; DE 13-10, Page ID 205. But KDOC's calculation of Bowling's total term of imprisonment under § 532.120(1) is distinct from a determination of whether Bowling was still "in custody" on the Rockcastle conviction in 2012 for purposes of collaterally attacking it under § 2254.

We hold that § 532.120(1) does not alter the fact that Bowling's twenty-year Rockcastle sentence expired in 2009. First, the primary focus in a § 2254 "in custody" determination is whether the prisoner is suffering "present restraint" from the challenged conviction. *Maleng*, 490 U.S. at 492. Because Bowling's twenty-year Rockcastle sentence began in 1989, he was suffering no restraint from this conviction when he filed his petition in September 2012. In fact, KDOC informed Bowling in March 2012 that if his "death sentence [was] vacated," his Rockcastle sentence "would be recalculated" and "[u]pon recalculating [his] time, [he] would have a total sentence length of 20 years which would be served out and [he] would be released from DOC custody." DE 1-1, Page ID 99. The Kentucky Court of Appeals agreed. *See Bowling v. Commonwealth*, No. 2010-CA-000490-MR, 2012 WL 95425, at *5 (Ky. Ct. App. Jan. 13, 2012) (noting in dicta that, at the time the decision was rendered in January 2012, "Bowling ha[d] served the twenty years' imprisonment to which he was sentenced" on the Rockcastle conviction). Construing § 532.120(1) to extend federal *habeas* jurisdiction to situations where the prisoner no longer suffers restraint from the challenged conviction, as Bowling's interpretation does, "would read the 'in custody' requirement out of the statute." *Maleng*, 490 U.S. at 492.

11

Second, we have previously recognized that the merger language contained in § 532.120(1) does not create custody for *habeas* purposes where it would not otherwise exist. In *Johnson v. O'Dea*, 19 F.3d 19, 1994 WL 51581 (6th Cir. Feb. 18, 1994) (table decision), we noted that § 532.120(1) was "enacted to provide statutory guidance for the administrative task of calculating the maximum total time for which individuals may be incarcerated when serving multiple sentences," and "not to merge consecutive sentences for purposes of collaterally attacking them." *Id.* at *4 (citing 1974 Commentary, Kentucky Revised Statutes). Although it is true that *Johnson* dealt with consecutive sentences and not concurrent ones, the reasoning applies with equal force here.[5] Moreover, other courts interpreting similar merger statutes in the *habeas* context have reached the same conclusion. *See, e.g.*, *Hurdle v. Sheehan*, No. 13-cv-6837, 2016 WL 4773130, at *3–4 (S.D.N.Y. Sept. 12, 2016).

Third, Bowling's interpretation of § 532.120(1) contravenes the policy underlying the federal *habeas* statute. As the Supreme Court has noted, the "core purpose" of federal *habeas* review is to "shorten [a] term of incarceration" in the event a petitioner "proves unconstitutionality." *Garlotte v. Fordice*, 515 U.S. 39, 47 (1995). Bowling's interpretation would have the opposite result; it would lengthen potentially unconstitutional confinement. And this court "has clearly indicated an intention not to 'open the door' to the creation of jurisdiction for sentences which have been fully served." *Johnson*, 1994 WL 51581, at *3. Bowling's interpretation of § 532.120(1) does just that. Accordingly, we find that § 532.120(1) does not

---

[5] It is true that the Supreme Court has allowed *habeas* challenges to consecutive sentences that were either already served, *see Garlotte*, 515 U.S. at 45–46, or had yet to be served, *Peyton v. Rowe*, 391 U.S. 54, 67 (1968). This makes sense because a successful challenge to a consecutive sentence (whether expired or impending) will necessarily shorten the prisoner's term of incarceration. *See Garlotte*, 515 U.S. at 47. The same is not true of challenging an expired concurrent sentence. Even if successful, invalidation of an expired concurrent sentence will have no effect on the ultimate length of incarceration. *See Mays*, 580 F.3d at 1140–41.

perpetuate Bowling's twenty-year Rockcastle sentence until the expiration of his death sentence for purposes of challenging it under § 2254.

IV.

Finally, Bowling argues that, even if his Rockcastle sentence had expired by the time he filed his September 2012 petition, we should nonetheless entertain his *habeas* petition under *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001). In *Lackawanna County*, the Supreme Court reaffirmed its prior holding from *Daniels v. United States*, 532 U.S. 374 (2001), that "once a state conviction is no longer open to direct or collateral attack in its own right . . . , the conviction may be regarded as conclusively valid." *Lackawanna Cty.*, 532 U.S. at 403. It further held that even "[i]f [the] conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." *Id.* at 403–04. A plurality of the Court fashioned an exception to this latter holding, however, which Bowling argues is applicable here. This exception applies where the "defendant can[not] be faulted for failing to obtain timely review of [the] constitutional claim" because the state court, "without justification, refuse[d] to rule on [the] constitutional claim that [was] properly presented to it." *Id.* at 405. The plurality reasoned that, "[i]n such situations, a habeas petition directed at the enhanced sentence may effectively be the first and only forum available for review of the prior conviction." *Id.* at 406. This exception is not broad enough to encompass Bowling's claim.

As an initial matter, because Bowling's Rockcastle sentence has fully expired, he may invoke this exception only if his § 2254 petition can be construed as challenging his 1992 Laurel County sentences, as enhanced by the allegedly invalid Rockcastle conviction. *See id.* at 401, 403. This construction of Bowling's petition is tenuous given his § 2254 petition only nominally

13

references his Laurel County conviction and sentences.  Moreover, because Bowling currently has a separate § 2254 petition pending before this court in which he explicitly challenges the constitutional defects in his Laurel County conviction, interpreting his petition in this manner is duplicative and would require dismissal under 28 U.S.C. § 2244.

More importantly, Bowling's Rockcastle conviction could not have been used to enhance his Laurel County sentences because it occurred four years *after* those sentences were imposed. Recognizing this defect, Bowling argues that *Lackawanna County* nevertheless applies because *evidence* of the Rockcastle crime led to his Laurel County convictions.  But as the Commonwealth notes, this evidence was admissible under Kentucky Rule of Evidence 404(b) regardless of whether Bowling was ever tried and convicted on the Rockcastle crime.  *See Bowling*, 942 S.W.2d at 301.  Thus, even if Bowling's Rockcastle conviction was permeated with unconstitutional defects, invalidation of that conviction would have no effect on his Laurel County sentences.

The cases on which Bowling relies to support an extension of *Lackawanna County* to this case are inapposite.  In those cases, it is true, the petitioner was permitted to invoke *Lackawanna County* to challenge a *later* expired conviction that adversely affected an *earlier* conviction under which the petitioner was still confined.  *See Brattain v. Cockrell*, 281 F.3d 1279, 2001 WL 1692470, at *2 (5th Cir. Nov. 27, 2001); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 827–28 (E.D. Mich. 2004).  But in both of those cases, *Lackawanna County* applied only because the later conviction was adversely affecting the petitioner's parole eligibility on the earlier sentence. *See Brattain*, 2001 WL 1692470, at *2; *Ward*, 323 F. Supp. 2d at 827–28.  The same cannot be said of Bowling's Rockcastle conviction.  Because Bowling was sentenced to death for his

Laurel County crimes and is thus not eligible for parole, his Rockcastle conviction will have no effect on future parole eligibility or the length of his Laurel County sentences.

Lastly, there is no evidence that the state court, "without justification, refuse[d] to rule on [Bowling's] constitutional claim that [was] properly presented to it." *Lackawanna Cty.*, 532 U.S. at 405. Instead, it appears that the state court diligently considered and ruled on Bowling's various motions throughout the state-court proceedings. Bowling simply chose a circuitous route through the state courts that rendered him no longer "in custody" on his Rockcastle sentence when his § 2254 petition was filed in September 2012. *Lackawanna County* cannot save him.

V.

For the foregoing reasons, we affirm.

**STRANCH**, **Circuit Judge, dissenting.** I write separately to address the factual issue that underlies our legal ruling—whether Ronnie Bowling was still "in custody" on his Rockcastle County conviction at the time he filed his habeas petition, as required for federal jurisdiction. Because Bowling was not owed pre-trial custody credit toward his Rockcastle County sentence, nor did he receive it, I believe he was "in custody" and, therefore, respectfully dissent.

As the majority notes, to determine whether Bowling was in custody on his Rockcastle County sentence, we must first determine to which sentence his pre-trial custody credit applies. Kentucky law and Kentucky Department of Corrections (KDOC) policies guide the inquiry regarding his pre-trial custody credit, and clarify how that credit is calculated in a factual scenario involving multiple indictments and sentences. KDOC Policy 28-01-08(II)(A)(2) states: "Where multiple felony indictments are involved, any applicable credit shall be applied to the indictment which is sentenced first." KDOC Policy 28-01-08(II)(A)(6) states: "If an offender is being sentenced on more than one felony indictment at the same time, custody time credit shall be calculated separately for each indictment . . . . If those felony detainments overlap, one indictment shall receive credit while the other indictment shall have fewer or zero (0) days credit." And that is what happened here: Bowling's credit was applied to his first Laurel County sentence. The KDOC Resident Record Card confirms this, noting that Bowling was given 1,378 days of jail credit on his Laurel County burglary sentence, and no days of credit for his five other Laurel County sentences or his Rockcastle County sentence.

KRS § 532.120(3) does not conflict with the KDOC policies cited above—the policies and the statutory language are easily read together, and appear to have been created to do so. The statute uses mandatory language ("shall") to prevent defendants from being completely

16

denied their custody credit. It does not mandate or explain how credit should be applied. KDOC policies specify exactly how the credit is awarded in different situations. This makes practical sense. The Department of Corrections regularly deals with issues of custody credit in multiple convictions, including situations in which a defendant was convicted and sentenced in different counties on different dates, as here. In light of this expertise, it is not surprising that nothing in the statute attempts to reach the level of granularity that would specify to which sentence a credit should apply and that such decision is instead entrusted to the KDOC.

This reading is consistent with the Kentucky Supreme Court's decision in *Bowling v. White*, 480 S.W.3d 911, 913 (Ky. 2015). In certifying questions to the Kentucky Supreme Court, the district court assumed that Bowling was due credit for his pre-trial custody time, that the sentencing court did not give him that credit, and that the KDOC did credit Bowling with that time. (R. 88, PageID# 1487-91) ("Seven years elapsed between Ronnie Lee Bowling's arrest and his conviction for attempted murder. Bowling spent those seven years in jail. Kentucky law requires what common sense suggests: That those seven years should be credited towards his resulting 20-year sentence. But the sentencing court did not credit Bowling with those years, and Bowling never appealed. Kentucky's Department of Corrections, however, did credit Bowling with that time. The question presented by this case is whether the Department of Corrections can remedy the sentencing court's error.").

Bowling, proceeding pro se at the time, did not challenge these erroneous factual assumptions. The Kentucky Supreme Court expressly assumed the facts as presented by the district court, and left any fact finding about Bowling's situation up to the district court. *Bowling*, 480 S.W.3d at 913 ("The record in this case is sparse because it concerns the certification of a question of law, and we are thus dependent on the facts as articulated by the

17

district court at its request."). The state Supreme Court went on to hold that the KDOC did have the power to alter a mistake, a holding Bowling does not contest. *See id.* In a situation where an individual was mistakenly denied credit by a trial court, the KDOC is authorized to correct the error. *See id.* However, this holding is not relevant to the determination facing this panel: if Bowling was actually owed credit on his Rockcastle County sentence, and if he received it.

Justice Seay's dissent highlighted this problem.

> The Rockcastle trial court correctly awarded Bowling zero days custody time credit . . . . This court does not have Bowling's Rockcastle [Presentence Investigation Report], but if Probation and Parole calculated his custody time credit according to applicable statutes and policy, the PSI should have shown Bowling was entitled to zero days custody time credit. This is because Corrections would have already applied the entire custody time credit to the Laurel conviction, which was the "indictment which is sentenced first."
>
> . . .
>
> While the U.S. District Court found the Rockcastle court mistakenly awarded Bowling zero days custody time credit, there appears to be no basis in the record upon which the court could base that finding. It appears more likely the Rockcastle trial court's award of zero days was correct, based upon Corrections' likely initial calculation and applicable statutes and policies. The U.S. District Court also found Corrections "recalculated" Bowling's custody time credit. There also appears to be no basis in the record upon which the court could base that finding.

*Id.* at 918-20 (Seay, J., dissenting).

The *Bowling* decision does not address the issue at hand. Under Kentucky law and KDOC policies, Bowling's credit was properly applied to his first Laurel County sentence, as reflected in the record. He was not entitled to have pre-trial jail custody credit on his Rockcastle County sentence, and neither KRS § 532.120(3) nor the Kentucky Supreme Court say otherwise.

Further, the evidence does not show that Bowling was awarded credit on his Rockcastle sentence, rather just the opposite. The majority points to a March 20, 2012 letter from a KDOC official to support the contention that the KDOC awarded Bowling pre-trial custody credit on his Rockcastle County sentence. But that letter is not a "concession" that the KDOC did not have

18

custody over Bowling. Rather, it is premised on a hypothetical—if Bowling were "granted a new trial and [his] death sentence [was] vacated," his sentence would be recalculated. (R 1-1, PageID# 99). Upon recalculation, the letter states, his sentence would have been considered served out and he would be released from custody. It makes sense that if Bowling's Laurel County sentence were vacated, his pre-trial custody credit would transfer to his Rockcastle County conviction pursuant to KRS § 532.120(3). Thus, if his Laurel County sentences were vacated, the KDOC would no longer have custody of Bowling. *See* KRS § 532.120(4). This letter explains what would happen in a hypothetical situation that has not occurred, but it does not demonstrate that Bowling received credit on his Rockcastle County sentence.

The evidence showing that Bowling did not actually receive credit on his Rockcastle sentence is strong. His Resident Record Card indicates that his entire credit was applied to just one of his Laurel County convictions. Bowling also asks the panel to take judicial notice of two letters, both from the Assistant District Supervisor of the KDOC. The first states that Bowling was given zero days of credit for his Rockcastle sentence, and the second clarifies that because he was sentenced first in Laurel County, his full credit was applied solely to that case. In sum, the record does not support the conclusion that custody credit was ever applied to Bowling's Rockcastle County sentence.

Because Kentucky law and KDOC policies do not mandate that Bowling receive pre-trial custody credit on his Rockcastle County sentence, and because the evidence does not show that he was ever awarded such credit, he was still "in custody" for federal habeas purposes at the time he filed his petition. Therefore, I respectfully dissent.